## People of the State of Illinois, Plaintiff-Appellee, v. Juan Vasquez, Defendant-Appellant.

### Gen. No. 52,289.

First District, Fourth Division.

December 17, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Laurence J. Bolon, and Patrick T. Driscoll, Jr., Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

OFFENSE CHARGED
Murder. Ill Rev Stats 1965, c 38, § 9–1(a)(1), (a)(2).

JUDGMENT
After a jury trial, defendant was found guilty of the lesser included crime of involuntary manslaughter and was sentenced by the court to a term of 7 to 9 years.

CONTENTIONS RAISED ON APPEAL
1. Defendant was prejudiced when the prosecutor, in his opening statement, related the coroner's findings to the jury.

2. Defendant was prejudiced when the prosecutor, in his final argument, made personal comment as to defendant's guilt.

3. References to defendant's family during trial and in closing argument were also prejudicial to defendant.

EVIDENCE

The evidence is undisputed, as no evidence was introduced on behalf of defendant. On August 5, 1966, defendant drove his automobile into the gas station of Ernest Medina, Sr., at a speed of approximately 30 miles per hour. The automobile narrowly missed Medina, who was leaning on a parked car, but did strike Medina's son, the parked car, and a tow truck. Defendant's automobile continued across a sidewalk where its left front fender struck the deceased, Nick Natale, who had crossed the street and was almost on the sidewalk, and knocked his body to the middle of the street. After continuing 10 to 15 feet past deceased, defendant put the automobile in reverse and backed it over deceased's body. Defendant continued to back his car to the gas station, where he emerged from his car carrying a 7-inch pipe.

Medina, Sr. had run to his home about 100 feet away. Defendant asked Medina, Jr. where his father was, and, upon being told, defendant started toward the house and was confronted by Medina, Sr.'s brother. Defendant told him he was going to "get" his brother. Medina, Sr. came out of the house with a gun. The brother, who also had a gun, apparently taken from the gas station, held defendant. After an exchange of words, defendant broke away and fled, but was apprehended by the brothers after a chase.

Adrian Ramos, an acquaintance of Medina, Sr. and defendant, testified that defendant had told him, approximately two months before the occurrence, that he was going to kill Medina, Sr. The witness had informed Medina of the threat.

69

## OPINION

Defendant does not contest the sufficiency of the evidence, but contends that the trial was unfair because the prosecutor in several instances had made prejudicial comments and elicited prejudicial testimony.

Defendant first objects to certain remarks made in the opening statement of the Assistant State's Attorney who spoke to the jury as follows:

> [Y]ou will come to only one conclusion, and that conclusion, which the Coroner himself arrived at, namely, that the decedent died as a result of the injuries inflicted upon him by the vehicle and that this in fact was murder. Thank you.

Defendant's attorney objected to this statement. The court then asked the defense attorney to proceed with his opening statement, which he did. At this point, the judge met with both lawyers out of the jury's presence, and defendant's attorney moved for a mistrial on the basis of what he claimed was a prejudicial opening statement. He argued that since the conclusions of the Coroner, other than the cause of death, would not be admissible, that part of the statement—to the effect that the Coroner had found defendant guilty of murder—was ground for a mistrial. The court reserved its ruling.

 We do not agree with defendant's interpretation of this statement as the only reasonable one, nor do we believe that its effect was seriously prejudicial to defendant. An opening statement is designed to advise the jury of the factual questions involved in the case to prepare them for forthcoming evidence, and to relate what counsel expect that evidence to show. Taken in this light, it is reasonable to conclude that the prosecutor was attempting to apprise the jurors of the medical evidence as to the cause of death (injuries inflicted by defendant's automobile), and was asking them to con-

clude from all the evidence "that this in fact was murder." Even when viewed unfavorably to the State, opening statements will not be considered as ground for reversal unless it appears that they influenced the jury in a manner resulting in substantial prejudice to defendant. People v. Stahl, 26 Ill2d 403, 186 NE2d 349.

As stated in People v. Berry, 18 Ill2d 453, at page 458, 165 NE2d 257:

> Where it appears that improper remarks do not constitute a material factor in the conviction, or that they are of such a minor character that prejudice to defendant is not their probable result, the verdict will not be disturbed.

In the instant case, the Coroner's pathologist testified as to the cause of death (multiple internal injuries), and gave no opinion as to the crime charged. Furthermore, the jury received an instruction that statements of counsel are not evidence and that their verdict should be reached on the basis of the evidence, placing no reliance on statements of counsel not supported by the evidence. That the jury did not find defendant guilty of murder, but only of involuntary manslaughter, vitiates defendant's argument as to the prejudicial effect of the statement. We find that the remark was not sufficiently prejudicial to defendant to warrant reversal.

■ ■ Defendant next contends that the prosecutor's closing argument prejudiced defendant because in it he expressed his own opinion as to defendant's guilt. The rule is that a prosecutor acts improperly if he expresses his own individual opinion or belief in defendant's guilt, unless he bases that opinion on the evidence. People v. Provo, 409 Ill 63, 97 NE2d 802; People v. Black, 317 Ill 603, 148 NE 281. The alleged improper remarks follow:

71

"Plea for mercy? Indeed. I am the most merciful person, and my associate is, also. We chose the method of presenting this case. We chose, indeed, what we are asking you to do. We analyzed what we thought was his thinking, and we determined the degree of malice, and we said to ourselves that his malice is not the greatest that we have seen around here, but it's great enough.

"We began this case by showing some mercy and some compassion for him, but mercy and compassion are a two-way street. A human being can only receive mercy and passion [sic] when he gives mercy and compassion. And did he give it? There's a man who lived on the morning of August 5th, 1966. You didn't see him. You saw his brother who looked like him."

Defense Attorney: "I object, your Honor, this is beyond the bounds."

The Court: "Overruled. Proceed."

We find that the prosecutor's statements were based upon "facts appearing in the proof or on legitimate inferences deducible therefrom," and were not improper. People v. Ostrand, 35 Ill2d 520, at 531, 221 NE2d 499. He did not lead the jury to believe that he possessed more information in adducing these inferences than that which was available to them.

██ Nor is there any impropriety manifest in the tone of defendant's statement, specifically those portions which relate to defendant's degree of malice and lack of compassion. "It is proper for the prosecuting attorney to reflect unfavorably on the accused and to denounce his wickedness and even indulge in invective." People v. Ostrand, supra, at 532. Again, we fail to discern substantial prejudice to defendant by reference to malice on his part, since the jury's verdict found defendant guilty only of involuntary manslaughter, a crime which does not involve malice. Ill Rev Stats 1967, c 38, § 9–3.

Defendant's last contention is that references to decedent's family elicited during trial and stated in closing argument by the prosecuting attorney were also prejudicial to defendant. Appearing as a witness for the State, the decedent's brother responded to the following questions:

> Q. (Ass't State's Attorney) "Sir, are you acquainted with the fact whether or not Nick Natale was married?"
> A. "Yes, he was married."
> Q. "And did he have any children?"
> A. "Two."

At this point, defendant's attorney objected (with argument in chambers) that this line of questioning tended to inflame the jury and was not relevant to the issues of the case. The court sustained the objection, stating, "I will instruct [the prosecuting attorney] to stay away from that prejudicial area that you are about to get into." Defendant argues that the error was not fully corrected because the jury was not instructed to disregard the evidence. We note that defense counsel made no request of the court for such an instruction.

Defendant argues that the two prosecuting attorneys returned to this improper, inflammatory-type comment in their closing argument, which was in part as follows:

> "But he lived, and to the extent that his brother testified concerning his existence, he was married and he had two children."
>
> . . . . . .
>
> "May it please the Court, Mr. Gilman, my associate, Mr. Smith, ladies and gentlemen of the jury; what are the civil liabilities for murder? There are none. Counsel has stated repeatedly that he is not seeking mercy, he is not pleading mercy. Yet his entire argument is based thereon. During the course

of counsel's argument he made one point, that is true, no question about it. There is tragedy in this. There is a tragedy to Mrs. Natale because she doesn't have a husband. To Mrs. Natale's children. They no longer have a father. A life has been taken."

██ Although it has been held that references to a victim's wife and family may prejudice a defendant in the eyes of a jury (People v. Bernette, 30 Ill2d 359, 197 NE2d 436; People v. Gregory, 22 Ill2d 601, 177 NE2d 120; People v. Dukes, 12 Ill2d 334, 146 NE2d 14), the mere fact that there was such a reference does not, in every instance, require reversal. People v. Jordan, 38 Ill 2d 83, 230 NE2d 161; People v. Golson, 32 Ill2d 398, 207 NE2d 68; People v. Brown, 30 Ill2d 297, 196 NE2d 664; People v. Thomas, 93 Ill App2d 77, 235 NE2d 298. Whether such references are sufficiently prejudicial to warrant reversal depends upon the facts of each case. Considering both testimony and argument of this character, the court in Bernette, supra, stated at page 371:

[W]here testimony in a murder case respecting the fact the deceased has left a spouse and family *is not elicited incidentally, but is presented in such a manner as to cause the jury to believe it is material,* its admission is highly prejudicial and constitutes reversible error unless an objection thereto is sustained and the jury instructed to disregard such evidence. In like manner, we have held that jury argument by the prosecution which dwells upon the decedent's family or seeks to relate a defendant's punishment to the existence of family is inflammatory and improper. (Emphasis supplied.)

Recognizing this rule, we must then determine whether the testimony and argument in this case fall within the rule.

The references to the victim's family in cases cited by defendant to support reversal are substantially more inflammatory than those in the case at bar. In Dukes, supra, deceased's 18-year-old son testified that he lived with his mother, two sisters and a brother. Defense counsel's objection to this testimony was overruled. That was followed by a closing argument in which the prosecutor apparently wept as he referred to the "family [defendant] has destroyed" and engaged in other improper argument, including the mention of facts entirely beyond the record. In Gregory, supra, the prosecutor, in closing argument, made a lengthy, impassioned plea with repeated reference to decedent's wife and children as his "widow" and "orphans." The prosecutor in Bernette, supra, through a series of questions, "went to the extreme of eliciting the ages of the children involved" and the court found that this prejudiced the defendant in the eyes of an aroused jury.

In the instant case, the testimony elicited from decedent's brother on direct examination was only incidental and was not of an inflammatory nature. The questioning was brief and cursory, and was abandoned upon defense counsel's objection, with an admonition from the court not to continue.

 We are of the opinion that the prosecutor's concluding comments, while by no means to be commended, were not so prejudicial to defendant as to deprive him of a fair trial. Considering that defendant's counsel, in his closing argument, had referred to deceased's family as presenting a "tragic picture," the prosecution's reply merely reiterated such reference. In the context of the prosecution's closing argument, the overwhelming evidence of defendant's guilt, and the fact that the jury returned a verdict for the lesser included offense of involuntary manslaughter, we conclude that neither the testimony in question nor the closing arguments were sufficiently prejudicial to require reversal.

Accordingly, we affirm the judgment of the Circuit Court.

Affirmed.

DRUCKER, P. J. and LEIGHTON, J., concur.