(No. 41983.— ▮▮▮▮▮▮▮▮)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* ROB-
ERT E. PALMER, Appellant.

*Opinion filed December 4, 1970.*

GERALD W. GETTY, Public Defender, of Chicago, (JAMES N. GRAMENOS, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE, PAUL P. BIEBEL, JR., and JOHN MICHAEL RYAN (Senior Law Student) of counsel,) for the People.

Mr. JUSTICE BURT delivered the opinion of the court:

The defendant here on appeal was arrested on August 24, 1968, for the alleged sale of narcotics to Officer John Peoples, an undercover Chicago policeman, on December 9, 1967. The circuit court of Cook County convicted the defendant of selling a narcotic drug and sentenced him to a term of not less than 12 nor more than 14 years in the Illinois State Penitentiary. It is that conviction which the defendant seeks to have overturned on the basis of numerous alleged errors in the trial court. Because of the number of points of contention which the defendant raises, the facts will be treated as they apply to each particular argument.

The first issue to be considered is whether the prosecutor's statements during his opening argument, referring to the defendant as sick, using a hypodermic needle and narcotics, and being part of a narcotics organization, when the defendant's charge was the sale of only .55 of a gram of narcotics on December 9, 1967, deprived the defendant of a fair trial on the charge in the indictment. These points, which were brought out in the opening statement, were

later testified to during the course of the trial. The State introduced evidence that the defendant, after selling the narcotics to Officer Peoples, stopped his automobile at a gas station and went to the washroom with a hypodermic needle and a package, saying he was sick and needed a fix. If this testimony was not erroneously allowed during the State's case in chief, then it could certainly not be said to be prejudicial in the opening statement. The State argues that this evidence was not introduced to show the defendant was involved in a crime other than that charged, but only to establish the motive for selling narcotics and that the defendant was himself an addict. This court in *People v. Dewey,* 42 Ill.2d 148, 157, stated the law as it pertains to the introduction of evidence of crimes not charged: "Evidence which tends to prove a fact in issue is admissible even though it discloses that the defendant committed another crime, and evidence which establishes motive, intent, identity, accident or absence of mistake is admissible even though it may also involve proof of a separate offense. (*People v. Harvey,* 12 Ill.2d 88.)" Since an addict will frequently sell drugs to obtain funds to feed his habit, the evidence was relevant to show motive and therefore was admissible, although it concerned the commission of another crime not charged.

With respect to the argument that the defendant was part of a narcotics organization, evidence supporting this contention was also introduced in direct testimony. The defendant in the case at bar was not arrested until approximately eight months after the offense for which he was charged. This evidence was introduced to explain the reasons for not apprehending the defendant at the time of the sale. Officer Peoples testified that he did not arrest the defendant then because the defendant had told him he was a lieutenant in an organization of narcotic violators and the officer was attempting to gain information concerning the more important men in the operation. This argument was in antici-

pation of the defense attack on the eight-month delay in arrest and was proper argument for the State to pursue.

The next issue that the defendant raises is that the prosecutor's use of inculpatory statements of the defendant in his opening argument and at trial, after the trial court denied a pretrial hearing on the defense motion to suppress such statements, the denial being based on the prosecutor's assurance that no statement of the defendant would be used, constituted a denial of due process. Prior to the trial, defense counsel made a motion to suppress any confession or statements on the grounds that the dictates of *Miranda* v. *Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, were violated because no constitutional warnings were given. The State replied by noting that it had no intention of using any oral admissions made by the defendant. At this point the court ruled that it would reserve the ruling on the motion to suppress until the time it might become necessary, since the State had informed the court that they did not plan on using any statement.

During the opening statement by the prosecution, the State indicated that the defendant, while driving Officer Peoples to the pick-up point, stated that once he could begin to trust his companion he could introduce him to the higher-ups and make bigger purchases. During direct testimony, Officer Peoples testified to the same conversation. Later, during the trial, defense counsel expressly waived the right to a motion to suppress in order to cross-examine Officer Peoples as to a statement which was made by the defendant while in custody at the police station. In this waiver no mention was made of the previous argument or testimony with respect to the defendant's statements to the under-cover agent at the time of the offense. It is apparent that neither the State nor the defense counsel considered statements made while not in custody to be the type which would be considered during the motion to suppress. The State, when it explained to the court that it would not use

any testimony as to statements of the defendant, appears to have meant that it would not use any in-custody statements.

In any event, such statements are not protected by the mandate of *Miranda*. The United States Supreme Court, in *Miranda*, was referring solely to the rights of a defendant during in-custody interrogation. In *Hoffa* v. *United States*, 385 U.S. 293, 17 L. Ed. 2d 374, 87 S. Ct. 408, the court, in deciding whether a teamster's union official, who made frequent reports to Federal agents concerning conversations he had heard while in the presence of the defendant, violated the defendant's fifth amendment right against self-incrimination, ruled that the *Miranda* decision had not been violated since there had never been a claim which had been or could have been made that the defendant's incriminating statements were a product of any coercion, legal or factual, as the statements were totally voluntary. The court stated earlier in that opinion, citing the dissent in *Lopez* v. *United States*, 373 U.S. 427 at 438: " 'The risk of being overheard by an eavesdropper or betrayed by an informer or deceived as to the identity of one with whom one deals is probably inherent in the conditions of human society. It is the kind of risk we necessarily assume whenever we speak.' " 385 U.S. at 303, 17 L. Ed. 2d at 382.

The defendant's next contention is that the introduction of testimony concerning other crimes which the defendant committed was reversible error. During the State's case in chief, Officer Peoples testified that he had seen the defendant selling narcotics on three or four previous occasions. He was the first witness to testify for the State and related that on December 9, 1967, he was working on an undercover assignment for the narcotics unit of the Chicago Police Department in the area between 43rd and Calumet and Prairie Avenue under the elevated tracks and in a restaurant. He was shabbily dressed. He parked his car on

the southeast corner of Calumet and 43rd, got out of the car and walked across the street to the northeast corner and stood there talking to a few "junkies". He testified: "I was then approached by a male Negro who told me his name was Bobby. I see him in this courtroom today and point him out in the second seat in the middle. I had seen the defendant on possibly four other occasions in the area of 43rd and Calumet. When he came up to me he asked if I was interested in buying a spoon of heroin. Those were not his exact words. They were, 'Would you dig up and buy this spoon of heroin?' I told him, 'yes'. He asked me did I have a car and I told him, 'yes.' We went in my car to approximately 6029 South Indiana. There was some conversation. The conversation was that he could get me a spoon of heroin which sold for approximately $125 for $85 or $90, that he was going to the major violators of the heroin law, that if these people suspected me of being a police officer, my life would be in danger. He was what you refer to as a lieutenant for these people at 60th and Indiana. There was no further conversation at this time."

The witness then stated, "He told me that he could get me an ounce of heroin after I became trusted, after my trust with these people was obtained. Our conversation took place in the automobile as we were going from 43rd and Calumet to 6029 South Indiana. When we arrived at 6029 South Indiana we parked and I handed him nine $10 bills. He told me he would be back in about ten to fifteen minutes. I asked him could I go and he said 'no' because the people had a lot of dope in the apartment where he was going and they didn't want any strange people coming around. He returned to the automobile about fifteen minutes later and handed me a tinfoil packet containing a white powder. He told me to drive to the gas station at 61st and St. Lawrence. We stopped at the station and he told me that he would be back in a few minutes, he was sick, and he needed a fix. At

this time, he took the hypodermic needle from his pocket and another tinfoil packet and went into the bathroom at that address. About fifteen minutes later he returned and got in the car. He told me to drive to 71st and South Chicago, where he got out. When he gave me the tinfoil packet, I took the packet with my right hand and placed it in my sock. After he got out of the car at 71st and South Chicago, I met with a police car under the viaduct of the Chicago Skyway and the Pennsylvania Railroad." Three detectives were in the car and tested the contents of the tinfoil package which were found to be heroin.

The witness expanded his description and furnished background for the incident leading up to the arrest of the defendant by describing in minute detail his observations of the defendant in the area prior to the original contact. The first time he saw the defendant making a sale he did not know the defendant but believed him to be actively engaged in the narcotic traffic. On one occasion a man walked up to the defendant and he watched the defendant go to his sock and hand the man a tinfoil package. He was outside the restaurant and he stood at the window of the restaurant, looking both ways to see that the police were not around. He saw a packet passing. On other occasions he also saw similar transactions following the format in which a peddler on the street sells to a junkie.

The transactions between defendant Palmer and Officer Peoples were all under surveillance by the rest of the team of police, three of whom testified and substantially corroborated Officer Peoples's description of the circumstances.

During cross-examination defense counsel inquired whether it was correct that Peoples had seen the defendant in the neighborhood about four times before. Peoples stated that this was true and later when asked on redirect examination how he knew Palmer, Peoples replied "I saw the defendant selling dope on numerous occasions in the area

* * *. This was in the area between 43rd St. between Calumet and Prairie under the elevated tracks, and in the restaurant."

Then on cross-examination he again replied that he saw the defendant makes sales three or four times, all under surveillance by three officers.

This evidence is admissible because it was introduced, not to show the propensity of the defendant to commit this crime because he had committed previous crimes, but to show identity and the system of operation. Testimony that the defendant was seen in this area contacting buyers on previous occasions undoubtedly makes the in-court identification by the officers months after the offense more credible to the jury. Evidence introduced to establish this element is admissible. (*People* v. *Dewey,* 42 Ill.2d 148.) This court in *Dewey* also cited *People* v. *Cole,* 29 Ill.2d 501, as authority for its statement that evidence of other offenses is admissible if relevant for any purpose other than to show propensity to commit a crime. In *People* v. *Cole,* where two Federal narcotics agents testified at the trial that one of them had made two previous purchases of narcotics from the defendant on occasions prior to the time the defendant was arrested, this court, in holding that the evidence was relevant for purposes other than to show the defendant's propensity to commit the crime for which he was arrested, stated at page 503 : "Defendant argues that the trial court erred in admitting evidence of the sale of narcotics by him on July 20 and on September 26 when he was only charged with, and was being tried for, the sale on October 10. Evidence of other offenses is admissible, if relevant for any purpose other than to show a mere propensity on the part of the defendant to commit the crime. [Citation.] Thus, we have allowed evidence of narcotics transactions by a defendant other than the one for which he is being tried where such evidence was relevant to prove his identity, [citations] his guilty knowledge [citations] or to show his design or system. [Citation.]

The Federal courts have used the same test in allowing evidence of other narcotics transactions by defendant." The reasoning in *People* v. *Cole* is directly applicable to the case at hand. The evidence of the previous sales by the defendant was not erroneously admitted.

The defendant's next contention is that the eight-month delay between the date of the offense charged and the date of the arrest was a denial of due process and did not allow for effective assistance of counsel at trial. Evidence was introduced by the State that the defendant had not been arrested at the time of the sale in order possibly to obtain convictions of other members of the narcotics ring. However, two days later upon the arrest of a relative of the defendant, Officer Peoples was recognized at the police station. Therefore, two days after the sale, the police commenced a search for the defendant, and a number of trips were made to the area of the alleged sale to attempt to arrest the defendant. It was the trial judge's opinion, after listening to the discussion, that the police made reasonable attempts to arrest the defendant within such time as there would be no unfairness to the defendant in the preparation of his case. In *People* v. *Allen*, 38 Ill.2d 26, where the defendant was not arrested until 44 days after his first sale of narcotics, this court ruled that a delay in and of itself did not constitute a denial of due process, suggesting that it was not unusual in a narcotics case to have delays of several months. The defendant attempts to distinguish this case from *Allen*, in that the State admittedly was not attempting to carry on an investigation during this time which resulted in a delay. The defendant also points out certain inconsistencies in the testimony of different officers as to when the original arrest warrant was issued and the number of times they tried to arrest the defendant. Although these inconsistencies as to specific dates and the number of trips made to attempt an arrest do exist, the testimony does clearly show that diligent effort was made throughout this

period to arrest the defendant. The delay in this case resulting from the failure of the police to locate the defendant was not the type of purposeful delay which would constitute denial of due process.

As to the defendant's contention that certain variances and inconsistencies in the testimony of the State's witnesses raised a reasonable doubt as to the defendant's guilt, it is the determination of this court, after reviewing the record as a whole, that these inconsistencies are of a minor nature and do not merit reversal. The verdict in the case at hand was sufficiently supported by the evidence. The defendant offered no evidence but rested at the close of the State's case.

The last issue which the defendant raises is that the prosecution in its closing argument prejudiced the defendant by certain statements. The State's arguments, that the defendant was part of a narcotics ring, that he was a big man in the ring, that he had been seen selling several times previous to the offense charged, that he had taken a fix immediately after the sale, and that he had gone underground in an attempt to flee from prosecution, were all sufficiently substantiated by the State's testimony so as not to be prejudicial to the defendant, especially in the light of the latitude given to counsel in the closing arguments. This court in *People* v. *Miller*, 13 Ill.2d 84 at 109, stated: "Statements of counsel and argument based upon facts and circumstances proved, or upon legitimate inference therefrom, do not exceed the bounds of proper debate and are not to be discountenanced by the courts." As to the State's suggestion that a Federal agent had been killed recently while investigating a narcotics ring and its attempted statement concerning information contained in the police report, to which the defendant objected, the jury was instructed to disregard those statements, and a cautionary instruction was given to the jury that police reports are not admissible into evidence. This procedure taken by the court was sufficient to render harmless any improper statements made by the prosecution.

This court stated in *People* v. *Nicholls,* 42 Ill.2d at 100: "We find that some of the prosecutor's remarks were improper but we do not find under the circumstances of this trial that because of them the judgment should be reversed. Considering the comments made in the light of the evidence of the guilt presented by the prosecution it cannot be said they represented a material factor in the conviction and that the verdict would have been different had the comments been unsaid." This same position is taken by this court with respect to the statements made in the instant case.

The prosecutor also argued that the State's evidence was uncontradicted by the defense. The defendant maintains that this was prejudicial in that it amounted to a comment which was intended to direct the jury's attention to the defendant's failure to testify on his own behalf in violation of the fifth amendment to the United State's constitution. This court, however, has held that in a criminal case, where there is no evidence contradicting the case made by the People, a statement by the State's Attorney that the evidence has not been contradicted is not a reference to the failure of the defendant to testify, even if the defendant was the only one who could have denied the State's testimony. (*People* v. *Birger,* 329 Ill. 352; *People* v. *Norman,* 28 Ill.2d 77; see, also, *People* v. *Burton,* 44 Ill.2d 53, reversed on other grounds.) The test to be applied in a situation such as that presented by the instant case is whether the reference was "intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify." (*People* v. *Mills,* 40 Ill.2d 4, 8, citing *Watt* v. *People,* 126 Ill. 9, 32.) This court, however, went on to state in *Mills* that an argument that the State's evidence was uncontradicted was permissible. As was noted in *Birger,* it is the right and duty of the State to review the evidence and discuss its weight; and that is all that was done in the instant matter.

As to the prosecution's statement that the defense coun-

sel was attempting to raise a smoke screen and his reference to the joking manner of the defense counsel, it is the opinion of this court that this was not reversible error. The comments were made about certain conduct which the jury could observe and inferences that could be derived from the evidence presented. Although it is improper for the State to make statements about the defense counsel's conduct solely to inflame the prejudices of the jury, we have concluded in previous cases, as we do here, that from the entire record and the entire argument of counsel the personal attacks on the defense attorney were not of such magnitude as to justify a reversal. (*People* v. *Berry*, 18 Ill.2d 453, *People* v. *Burnett*, 27 Ill.2d 510.) In accord with our conclusions as to the foregoing issues, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*