THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JACK BRIDGES, a/k/a Jack Belton, Defendant-Appellant.

First District (1st Division) No. 78-298

Opinion filed May 7, 1979.

Ralph Ruebner and Susan McElroy, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, James Veldman, and Gerald E. Nora, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Jack Bridges, also known as Jack Belton, was indicted for attempt murder and two counts of aggravated battery. (Ill. Rev. Stat. 1977, ch. 38, pars. 8—4, 9—1, 12—4(a), 12—4(b)(1).) A jury found defendant not guilty of attempt murder, but guilty of each count of aggravated battery. The trial court entered a judgment of guilty of aggravated battery and sentenced defendant to a term of imprisonment of not less than 2½ nor more than 7½ years.

On appeal, defendant asserts that: (1) the State committed prejudicial error in its opening statement; 2) repeated references to defendant's alias by the State were improper and prejudicial; and 3) the trial court erred in imposing concurrent sentences for each count of aggravated battery where both counts arose from the same act.

Defendant does not contest the sufficiency of the evidence. Accordingly, a detailed rendition of all the facts is not necessary. Additional facts will be recounted in connection with the contentions of the parties.

On October 25, 1973, Larry Henderson was the victim of a shotgun shooting. Henderson testified that he drove to his mother-in-law's residence to pick up his wife, Debra. Upon arrival, he observed a man he knew only as "Jackie" reach into the trunk of his car, a 1965 or 1966 black over white Cadillac. At trial, Henderson identified "Jackie" as the defendant. Henderson entered the home and told his wife to leave with him. At this point, he noticed "Jackie" had also come into the residence.

Debra Henderson insisted that she and her daughter were not ready to leave, but walked with her husband outside to his car. While sitting on the car they continued to discuss whether Debra would leave. At this point, defendant came running out of the house with a shotgun. Defendant approached Henderson and shot him in the back of his right shoulder and neck. On cross-examination, Henderson admitted that, while on the front porch, he put his hands around his wife's neck and slapped her on her face.

Leona Lake and Bernice Smith were also occurrence witnesses. Smith was Debra Henderson's mother and Lake was a friend of the family. Both were at Smith's home the day of the incident and testified that defendant shot Henderson. Smith also testified that Debra and Larry Henderson were on the car fighting and that Larry was slapping and choking Debra immediately before defendant emerged from the house with a shotgun. Lake stated that she heard someone yelling "Jackie" before defendant ran out of the house toward the Hendersons. Both Lake and Smith made positive, in-court identifications of defendant as the assailant.

On cross-examination, Lake explained that she did not contact the police before trial because she did not want to get involved as she was fearful for her safety and that of her child. On cross-examination, Smith testified that the evening of the shooting she told police that Jack Bridges did the shooting. She further stated that Bridges had been "going out" with her daughter.

Officer Edmond Larenz testified for the State that on the day of the shooting he interviewed the victim at the hospital. Henderson identified his assailant as "Jackie." Henderson provided no other information concerning the whereabouts or identity of "Jackie." Larenz also ascertained that Debra Henderson knew a man known as "Jackie."

Larenz also had a conversation with Larry Henderson's grandmother at the hospital. At the scene of the incident, Larenz interviewed Smith and discovered that she also knew "Jackie."

Based on these interviewed, Larenz located "Jackie's" employer, the manager of a gasoline station. The station manager informed Larenz that he had an employee named Jack Bridges who drove a black over white 1965 or 1966 Cadillac. Larenz again contacted Larry Henderson, who nowiprovided "Jackie's" home address. Larenz then checked with the records division of the Chicago Police Department and discovered that an individual named Jack Bridges, also known as Jack Belton, lived at the address Henderson had provided. Larenz then obtained a photograph of defendant which he presented to Henderson. Henderson identified the photograph as depicting his assailant "Jackie."

On January 7, 1974, Officer LaPorta and his partner noticed a 1965 black over white Cadillac, which had a cracked windshield and no brake lights. The vehicle was stopped and the driver produced a traffic summons made out to Jack Bridges. Officer LaPorta then saw a shotgun barrel on the floor of the rear seat. Defendant was placed under arrest and the gun and various shotgun shells were confiscated. Upon returning to the station, LaPorta checked certain police records and discovered that Jack Bridges, also known as Jack Belton, was wanted for aggravated battery.

The State also presented evidence probative of the fact that the shotgun found in defendant's car was the weapon used to shoot Henderson. It is not necessary to summarize this evidence, because defendant does not contest that his gun was the weapon used, but contends that at the time of the incident his gun and car were not under his control.

Defendant testified on his own behalf that he had known Debra Henderson and her family since grade school. They were close friends, but defendant denied dating Debra. According to defendant, he had met Larry Henderson on only one occasion. He also acknowledged that he kept a 20-gauge shotgun and shells in the trunk of his 1965 black over white Cadillac.

Defendant further testified that on October 25, 1973, Debra Henderson and her cousin came to his home to borrow his car. He had often lent his car to her and did so on this occasion. He had previously warned her to leave the shotgun in the trunk alone.

Shortly thereafter, defendant went to work at the gas station, where he stayed for an eight-hour shift. At 10:30 p.m., Debra Henderson returned with defendant's car. At this time, defendant first learned that her husband had been shot. Defendant maintained that he was at work during the time of the shooting and denied shooting Larry Henderson.

Defendant also introduced a transcription of the hospital notes of Doctor Lenardo Chato, who had examined Larry Henderson the day of the shooting. According to his documented patient interview, Henderson told

Dr. Chato that he did not see his assailant. Henderson had previously explained that he told Dr. Chato he did not know who shot him "because I felt he wasn't the police." Finally, Officer Larenz testified for the defense that when he interviewed Bernice Smith at the hospital, she denied seeing the shooting.

Defendant now appeals his conviction of aggravated battery with a deadly weapon and causing great bodily injury.

Defendant contends he was deprived of a fair trial due to three assertions made in the State's opening argument. He submits that these remarks were not later supported by evidence adduced at trial.

■■ The State responds that defendant has waived any objections on appeal by failing to object at trial or in his motion for a new trial. As a general rule, the failure by the defendant to raise an issue in his written motion for new trial constitutes a waiver of that contention upon appeal. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) We note, however, that defendant listed a general objection to the State's prejudicial and inflammatory opening statement in his motion for a new trial. Moreover, since defendant contends that the State's remarks were not later supported by the evidence adduced at trial, there was no basis for objection during the opening statement. Accordingly, we do not consider this issue waived.

First, defendant complains of the opening remark concerning the Hendersons' discussion about Debra's refusal to leave her mother's home:

"He [Larry Henderson] and his wife [Debra] left the house together, went outside, and were talking outside, having a discussion about this matter. His wife was sitting on a car out front. And Mr. Henderson was talking to his wife. *At which time, no argument was going on.*" (Emphasis added.)

Defendant asserts that all the testimony was directly to the contrary. We find that defendant misconstrues the record.

■ The remark complained of concerned the expected testimony of Larry Henderson. The time frame of the comment that "no argument was going on" is set by the earlier sentence: "His wife was sitting on a car out front." Larry Henderson's testimony was consistent with this statement. Henderson admitted placing his hands around his wife's neck and slapping her while they were on the front porch. However, he maintained that any physical contact had abated by the time the couple reached the car and that a normal conversation ensued. The fact that Bernice Smith contradicted Henderson by testifying that he slapped and choked his wife while they were sitting on the car has no bearing on this issue. The State was referring solely to Henderson's account of the incident. Since the State's opening remark was later supported at trial with admissible evidence, no error exists. *People v. Palmer* (1970), 47 Ill. 2d 289, 291, 265 N.E.2d 627, 629, *cert. denied* (1971), 402 U.S. 931, 28 L. Ed. 2d 866, 91 S. Ct. 1532.

The second statement complained of concerns the expected testimony of Dr. Chato, Henderson's treating physician:

"The doctor will testify as to the extent of the injuries, the lower neck area, and the left side, the back of the head, *with a 20-gauge shotgun.*" (Emphasis added.)

Defendant contends he was prejudiced because Dr. Chato did not testify concerning the type of shotgun used in the crime.

Dr. Chato testified that on October 25, 1973, he treated Larry Henderson, a shotgun victim brought to the emergency room. Henderson had sustained multiple small gunshot wounds on the back of the head, back of the neck and right side of the face. Dr. Chato described the patient's wounds as caused by multiple shotgun pellets. He did not testify concerning the gauge of shotgun or pellet size.

Dr. Chato testified for the State in order to demonstrate the nature and extent of Henderson's wounds. This was necessary to support the charge of aggravated battery due to great bodily harm. (Ill. Rev. Stat. 1977, ch. 38, par. 12—4(a).) The State produced evidence as to the gauge of the shell through Officer Bernard Cooney's testimony. He recovered two Montgomery Ward brand .20-gauge shotgun shells from beside a pool of blood at the scene of the crime. Moreover, the cartridge box found in defendant's car contained over a dozen rounds of .20-gauge Sears and Montgomery Ward shotgun shells. We also note that defendant does not maintain that his gun was not used, only that he did not shoot the victim.

Moreover, opening statements cannot be considered as grounds for reversal unless it appears that they influence the jury in a manner resulting in substantial prejudice to the defendant. (*People v. Vasquez* (1969), 118 Ill. App. 2d 66, 254 N.E.2d 617.) Dr. Chato's failure to express an opinion as to the gauge of the shotgun pellets is a discrepancy of minor character. In light of evidence that Henderson's wounds were caused by .20-gauge shells, no error was committed.

Defendant's third objection concerns the prosecutor's statement that Investigator Larenz would testify that the victim's grandmother told him:

"* * * I know Jack, he drives that kind of car [1965 or 1966, black over white Cadillac] and he works at some Shell Service station at Roosevelt and Independence."

Larenz's testimony on this point was objected to on the grounds of hearsay and the trial court sustained the objection.

Nonetheless, the trial court allowed Larenz to testify that as a result of the conversation he went to the gas station at Roosevelt and Independence. Larenz spoke with the station manager and learned that Jack Bridges worked at that station. Additionally, bridges was known as "Jackie" and drove a 1965 or 1966 black over white Cadillac.

The trial court's exclusion of hearsay testimony only affected the form

of the presentation of Larenz's testimony. The substantive evidence that defendant worked at the Shell Station and drove a black-over-white Cadillac was still elicited. Since the substance of the evidence at trial was the same as predicted by the prosecutor in his opening statement, no error occurred. *People v. Palmer* (1970), 47 Ill. 2d 289, 291, 265 N.E.2d 627, 629, *cert. denied* (1971), 402 U.S. 931, 28 L. Ed. 2d 866, 91 S. Ct. 1532.

■ Moreover, none of these remarks constitute reversible error due to the numerous cautionary directives by the trial court, the State and the defense that opening statements of counsel were not evidence. The court specifically instructed the jury that "any statement or argument made by the attorneys which is not based on the evidence should be disregarded." See *People v. Vasquez* (1969), 118 Ill. App. 2d 66, 254 N.E.2d 617.

■ Defendant's second contention is that the State's repeated reference to defendant's alias in order "to insinuate to the jury that Bridges had been in trouble before, and had to conceal his identity" deprived him of a fair trial.

The State argues that defendant has waived this issue upon appeal since the defense only objected on one occasion during trial and failed to include this contention in his motion for a new trial. As a general rule, the failure to object during trial and in post-trial motions waives an issue for purposes of appellate review. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Trefonas* (1956), 9 Ill. 2d 92, 136 N.E.2d 817.) Accordingly, this issue has been waived.

■ In any event, we find the State's references to defendant's alias were proper. The introduction of a defendant's alias is not proper unless: (1) the State has proof of such alias; (2) the alias is in fact proved; and (3) the alias is relevant and material to some issue in the case. (*People v. Singer* (1919), 288 Ill. 113, 123 N.E. 327; *People v. Carr* (1969), 114 Ill. App. 2d 370, 252 N.E.2d 912.) The first two requisites are met by Officer Larenz's testimony that pursuant to his investigation he learned "Jackie's" address, full name and alias. Moreover, on cross-examination defendant admitted that he was known by his alias, Jack Belton.

Proof of defendant's alias was also relevant and material to an issue in the case: the identity of the offender. The State has the burden of proving beyond a reasonable doubt that an accused is the person who committed the crime charged. (*People v. Clark* (1972), 52 Ill. 2d 374, 386-87, 288 N.E.2d 363.) The facts of this case show that the introduction of defendant's alias was a relevant part of his identification. Initial police interviews of Mr. and Mrs. Henderson and Bernice Smith established only that the assailant was known as "Jackie." Continued investigation uncovered "Jackie's" address and place of employment. Investigator Larenz first learned the assailant was Jack Bridges from "Jackie's" employer. Several days later, the police received further information when Larry Henderson remembered "Jackie's" address. Larenz checked this

address and the name of Jack Bridges against police records. He discovered Jack Bridges, also known as Jack Belton, lived at the address which Henderson provided. Furthermore, Henderson later positively identified a records division photograph indexed by the police identification number of Jack Bridges, also known as Jack Belton. At trial, defendant admitted that he was also known by this alias.

The State was forced to present evidence that defendant was the assailant in this manner because the witnesses could not identify him by his full name. Accordingly, the State's use of defendant's alias was necessary to explain the process by which he was captured and identified as Henderson's assailant. As the State points out in its brief, reference to defendant's alias did not predominate the course of the trial so as to insinuate defendant lived a life of crime. Among 27 references to defendant in the opening statement, only six times was he called "Jack Bridges, also known as Jack Belton." During the trial the prosecutor only mentioned the alias in cross-examination, when asking defendant if he was known by that alias. Larenz mentioned defendant's alias in explaining his investigation. In closing arguments, the State only mentioned the alias once, reminding the jury that defendant had admitted using the name "Jack Belton."

Cases cited by defendant do not negate the rule that an assumed name may be introduced if probative at trial but not solely to raise an inference that the alias was used to evade apprehension for prior criminal offenses. (*People v. Berlin* (1978), 58 Ill. App. 3d 612, 374 N.E.2d 948; *People v. Pumphrey* (1977), 51 Ill. App. 3d 94, 366 N.E.2d 433.) Defendant's reliance on *People v. Dukes* (1957), 12 Ill. 2d 334, 146 N.E.2d 14, is misplaced as that case is distinguishable.

In *Dukes*, the State made repeated references to defendant's alias over objection. During closing argument, the prosecutor implied that placement of an alias on an indictment did not occur by chance, but indicated defendant was of dubious character. In the case at bar, the record supports no inference of an attempt to defame defendant's character by introduction of his alias.

Defendant's final contention is that he was improperly sentenced on each count of aggravated battery where both counts arose from the same act. For the act of shooting Henderson with a shotgun, defendant was charged with, and found guilty of, two counts of aggravated battery: (1) battery with a deadly weapon, and (2) battery causing great bodily harm. *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273, is dispositive of defendant's contention. In *King*, the supreme court held that concurrent sentences cannot be imposed for separate offenses arising out of the same physical act.

The trial court, in imposing the sentence of not less than 2½ years and not more than 7½ years, stated:

> "You have been found guilty by a jury of two charges of aggravated battery. Since there are two ways of stating the offense legally and logically, any sentence that is imposed by the Court is concerned with both counts concurrently."

In so stating, it is clear that the trial court intended a single sentence for aggravated battery which concurrently addressed the two counts of aggravated battery. Concurrent sentences for each count were not contemplated.

We have been informed that the mittimus which we allowed to be filed as part of the record has been interpreted to mean that defendant (No. 74-2542) was sentenced to two counts of aggravated battery, receiving a sentence of 2½ to 7½ years on each to run concurrently.

The mittimus reads:

> "Term: Counts 1 and 2
> Minimum: Two years (2) and Six months,
> Maximum: Seven years (7) and Six months.  ·
> Both counts to run concurrent with, 76-1262."

The memorandum of orders in case No. 74-2542 in the record states:

> "P.P. For Sentencing
> 2 years 6 mos to 7 years 6 mos in the I.S.P. on ct 2 & ct 3
> *  *  *
> #74-2542 to run concurrent with 76 C 1262.
> 1 to 2 years #ct 1."

We conclude from the wording of the mittimus, from the trial court's statement at the sentencing and from the memorandum of orders that the trial court imposed but one sentence for both counts of aggravated battery in No. 74-2542 which was to run concurrently with a sentence on a separate and different offense (No. 76-1262).

■■ Because the interpretation of the mittimus by the Department of Corrections that defendant received two concurrent sentences for aggravated battery may adversely affect defendant's prospects for parole (see *People v. Schlenger* (1958), 13 Ill. 2d 63, 147 N.E.2d 316), we affirm defendant's conviction and sentence of not less than 2½ years and not more than 7½ years for aggravated battery and remand the cause for the issuance of a corrected mittimus to show but one sentence for that offense.

Affirmed and remanded with directions.

GOLDBERG, P. J., and McGLOON, J., concur.