(No. 37569.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LENNETTE BROWN, Plaintiff in Error.

*Opinion filed January 22, 1964.—Rehearing denied March 16, 1964.*

JOHN B. SNYDER, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys

General, and ELMER C. KISSANE and RICHARD T. BUCK, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant Lennette Brown and James Kyler were jointly indicted for the murder of Jerome Giza. A severance was granted, and defendant is here on writ of error to the criminal court of Cook County where he was found guilty by a jury and sentenced to the penitentiary for a term of 199 years.

Defendant contends that he was denied a fair trial because an allegedly coerced confession of the defendant was not excluded by the trial court, the prosecutor exceeded the bounds of proper cross-examination and impeachment, and because the prosecutor's closing argument was improper and prejudicial.

The essential facts are as follows: on October 15, 1960, between 8:00 and 8:15 A.M., Jerome Giza, a milkman, was delivering milk to an apartment building at 117 South Rockwell Street in the city of Chicago. He was being assisted by three young boys, James Ragusa, Emilo Gonzales and Ruben Johnson. James Ragusa went into the building ahead of the others to summon the automatic elevator and at the elevator encountered two men, one of whom he later identified as the defendant. The elevator twice arrived and departed before Giza and his milk cart reached the door. During this interval defendant and his companion remained. When Giza and the boys arrived, all six persons boarded the elevator which stopped on the fifth floor. Giza got out of the elevator with his milk cart, apparently to let the other men out. As he did so Kyler grabbed him, hit him, and demanded his money. Two of the boys stepped out of the elevator, as did Brown, and the boys testified that both Kyler and Brown had "shiny objects" in their hands. The

boys then ran back into the elevator and as they were ascending to the 13th floor they heard shots.

Defendant was arrested about 8:00 P.M., on October 18, three days after the shooting. He was questioned regarding the crime, furnished coffee and a sandwich, and about 9:00 P.M., admitted he had shot the deceased twice. He then went with the officers to the scene of the murder where he re-enacted the crime and demonstrated the route used by him in fleeing the scene. About midnight an assistant State's Attorney questioned defendant and the resulting stenographic transcript was initialled on each page and signed by defendant about 3:00 A.M. The confession stated in substance that Kyler asked Brown if he wanted to make some money, gave him a gun, and that Brown shot decedent twice during the robbery and Kyler shot decedent once.

Defendant's motion to suppress the confession which he claimed was secured by coercion was presented on the day set for trial and denied at the conclusion of the testimony thereon. At the trial all three boys identified defendant as the smaller of the two men in the elevator with them and Jerry Giza on October 15, and two of the boys testified that defendant pointed them out as companions of the milkman when they were brought into the police station to view a lineup following defendant's arrest. This was corroborated by the officer in charge of the lineup, and admitted by defendant who stated that he had seen the boys and the milkman together in the building where his sister lived. In addition to the boys, Mrs. Giza also testified. A ballistics expert stated the bullets taken from decedent's body came from two guns of different caliber. The People also presented at the trial all of the officers still living who had been present during the initial questioning and later transcription of defendant's statement, plus the assistant State's Attorney and court reporter who were also then present.

The evidence on behalf of defendant consisted of the

testimony of his sister, who lived in the building where the crime occurred, that he was at her home the afternoon of the day on which the crime was committed, but that he was not there in the morning as defendant's confession stated; a neighbor who testified that he and defendant sat on his back porch drinking beer from 7:30 A.M. until noon on the day of the killing; defendant's neighborhood grocer who testified he saw defendant and the neighbor on the porch drinking beer about 8:25 A.M.; the grocer's wife who stated she saw defendant and the neighbor drinking beer on the porch about 9:00 A.M. the same morning; the defendant, who repudiated his confession, stating he had been beaten and told what to say, both in the confession and during his subsequent testimony at the coroner's inquest which corroborated the confession; the defendant's landlord who testified he arrived home about 10:00 A.M. on October 15 and found defendant sitting on the porch, and a neighborhood resident who stated he had seen Kyler between 7:00 and 8:00 on the morning of the crime in company with a companion whom he could not identify.

Defendant's contention that the trial court erred in denying the petition to suppress the confession cites the rule that all material witnesses must testify at a preliminary hearing if there is evidence that a confession is coerced. (*People* v. *Wright,* 24 Ill.2d 88, 92.) The record establishes that all material witnesses were produced by the People at the preliminary hearing with the exception of officers Flowers and Linzy. Officer Flowers had died prior to the hearing, and the People stated to the court that officer Linzy was in a squad car which had no radio, and that every attempt had been made to locate him but without success. The judge then indicated he did not think Linzy's testimony necessary and denied the petition.

It is relevant to note that the petition to suppress was filed on April 3, 1961, and that the attached notice stated it would be presented to the court at 10:00 A.M., April 3.

The receipt of the State's Attorney evidencing delivery to him of a copy of the petition indicates he received it at 1:30 P.M., April 3. The hearing thereon was held on April 3, and it is apparent that little, if any, opportunity was available to the People in advance of the hearing to notify officer Linzy of the need for his presence. It is also relevant that the trial of the case commenced immediately following the ruling on the suppression of the confession, and that officer Linzy was called as a witness the following day and subjected to cross-examination prior to the introduction of any testimony relating to the confession or its admission into evidence.

The rationale of the rule cited by defendant is expressed in *People* v. *Sims,* 21 Ill.2d 425, at page 432, where, after reviewing many of the cases considering the question, this court stated: "The principle that emerges clearly from all these cases is that the persons who must be called as witnesses or whose absence must be explained are those persons whose testimony would be material on the issue of the voluntary nature of the confession." The explanation given the trial court of officer Linzy's absence from the preliminary hearing was a satisfactory one. While the record does not indicate the precise hour at which the hearing on the motion commenced, it involved the examination of five witnesses, and was concluded and the *voir dire* examination of the jury commenced before the court adjourned for the day. It is therefore apparent that whatever interval, if any, elapsed between service upon the People of notice of the hearing and its actual commencement, there was scant time to secure the presence of witnesses not readily available. Since the explanation of the officer's absence was a reasonable one, under the circumstances here prevailing, and the opportunity to cross-examine the witness the following day prior to use of the confession removed any possibility of prejudice to defendant, the admission of the confession was not error.

Defendant's second contention is that error occurred in

the improper cross-examination and impeachment of Robert Harrington, an alibi witness, who was asked whether he knew detective Pates and whether this officer had arrested the witness at a "policy station" several weeks prior to trial. The witness denied that this had occurred, and Pates then testified on rebuttal that he had attempted to arrest the witness on the preceding March 9 for attempting to run a policy station on his premises. While the questions relating to the arrest were improper, the difficulty with defendant's present position rests in the fact that no objection thereto was made in the trial court, and the matter is not now reviewable. *People* v. *Pittman*, 28 Ill.2d 100; *People* v. *Trefonas*, 9 Ill.2d 92, 98.

Defendant's final contention is that the argument of the prosecutor inflamed and prejudiced the jury; and defendant refers specifically to the prosecution's references to the innocent mind of the milkman, to society's high regard for a milkman's trade and to the "boozey" state of defendant's mind. We do not regard these comments as beyond the bounds of legitimate argument in view of the testimony presented. Further question is presented by defendant's complaint regarding the following excerpt from the closing argument: "The only stinking thing that we can lay our hands on are these two pellets. Why? They're not the size of BB's, and that's what we have got left for $25. So our friend Brown could wander over to a saloon and soak his rummy brain in booze, he delivered Jerry Giza into the arms of his wife, now a widow and while the children stood there, who are now orphans, she had this fact to console her: Take the two bullets and blow on them. God did it once, he'll put life in that clay again. (Objection by counsel for defendant, not ruled upon.) It didn't happen. The bullets are still laying there. There is no life in those two bullets and there never will be."

Defendant urges this argument constitutes reversible error because of the references to the family of the murder

victim, and cites our decisions in *People* v. *Gregory,* 22 Ill.2d 601; *People* v. *Dukes,* 12 Ill.2d 334, and *People* v. *Galloway,* 7 Ill.2d 527. While we have repeatedly condemned references to the decedent's family by the prosecution in closing argument, the comments relating thereto are substantially more aggravated in the cited cases than is true here. In *Gregory* the objectionable argument dwelt at length upon the plight of the widow and her three children; in *Dukes* the 18-year-old son of the decedent testified as to the remaining family members and defendant's objection to this testimony was overruled. It was followed by closing arguments during which the prosecutor apparently wept, referred to the "family he [defendant] has destroyed" and engaged in other improper argument including facts entirely beyond the record. While *Galloway* holds the introduction of testimony establishing that a People's witness had a wife and four children was error, the decision to remand involved additional errors of a more substantial nature, including denial of a petition to suppress evidence, prejudicially improper cross-examination, and wrongful refusal to give an instruction requested by defendant.

We believe the factual situation present here differs materially from that present in the cited cases. Here, the deceased's widow testified solely for purposes of identification of the decedent and his occupation. She made no reference to her children, and no objection was made to her testimony. So far as our examination of the record has disclosed, the first reference to decedent's children appears in the closing argument of defendant's attorney who expressed his sympathy to the widow and to her children. While we do not consider the type of argument demonstrated in the quoted excerpt to be desirable, we are of the opinion, considering reference to the decedent's family was initially made by defense counsel, that the prosecutor's reply was limited in its family reference, and that evidentiary support exists for the other comments made, that defendant was not de-

prived of a fair trial. While the sentence imposed was severe, the jurors had been qualified to impose the death penalty and were reminded of this fact by the prosecution in closing argument. The proof established a wanton, vicious killing, and defendant's guilt was clearly demonstrated.

For the reasons given, the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*