358

The People of the State of Illinois, Plaintiff-Appellee, v. Aaron Williams, Defendant-Appellant.

(No. 58363;

First District (4th Division)—January 23, 1974.

James J. Doherty, Public Defender, of Chicago (Robert Gevirtz, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis, Thomas A. Mauet, and Ronald Mendes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The defendant, Aaron Williams, was indicted on charges of armed robbery and attempt with intent to commit armed robbery. He was tried without a jury, was convicted of armed robbery, and was sentenced to serve five to eight years in the Illinois State Penitentiary.

In pursuing his right to appeal to this court from that conviction, the defendant, through an assistant public defender, filed a first brief in which he initially contended that (1) he did not knowingly waive his constitutional right to a jury trial, and (2) the testimony given by the two complaining witnesses was so incredible and inconsistent that it justi-

fies a reasonable doubt of his guilt. He subsequently moved and was allowed to file a supplemental brief in which he contends that under the new Unified Code of Corrections the minimum sentence should be reduced.

The State's evidence at trial consisted primarily of the testimony of the two complaining witnesses—Charlotte Taylor and her sister, Janice Anderson. Their testimony revealed the following:

On January 18, 1972, Charlotte Taylor, who resided with her sister in an apartment at 6307 South Eberhart in Chicago, answered a knock at the door. Aaron Williams, whom the two women knew at the time as Aaron, and another man unknown to them, came in. Charlotte had been preparing to leave the apartment with her little niece and did so within five minutes after the men had entered. As she was leaving Aaron said "You know what I came to do." She testified she did not know what he meant.

Janice Anderson testified that after her sister left she asked Aaron, whom she had not seen in some time, "where have you been so long?" He answered, "oh, out robbing folks." She testified further that she did not take him seriously at that point. He then followed her into the kitchen with a gun in his hand and said "You know what I'm here for." She replied she did not and he told her "I am here to rob you, and where is it at?" Again she said she did not take him seriously. He then said, "If I have to take this gun and put this up against this little yellow bitch's head," indicating Janice's ten year old daughter, "I bet you will tell me where it is at." He then placed the gun alongside the little girl's head, whereupon Janice panicked, started to cry, and pointed to a buffet from where he took two hundred fifty dollars which she had concealed there. He then accused her of having more money, at which time Charlotte Taylor returned to the apartment. Aaron cursed Charlotte and told her he wanted more money. When she responded that she did not know where the money was at, he slapped her in the face. In the meantime the other man, also carrying a gun, was ransacking the house and went through all the dresser drawers. Aaron then said "well, we are trying to decide what we are going to do with you. Usually we would tie you down and stab you or do something because I know you are going to call the police." Janice told him that she was "not going to call the police" and that he had all the money in the house.

After a while the telephone rang. First the defendant would not let anybody answer it, but then he told Janice to answer it while the other man listened on an extension phone. The caller was Janice's boy friend and he asked "hey, what's going on?" She said "nothing, I am being robbed" and that the robber was a guy named Aaron. The other man

listening on the extension phone then told Aaron that they should get out of there because the man on the phone was going to call the police. The caller then asked to talk to Charlotte, who repeated that they had been robbed. The two men left. Janice then called the police and related that she was robbed of two hundred fifty dollars and a Timex watch. She told the police that one of the robbers was "Aaron." The police asked "Aaron who?" and she said "I don't know." The police also had a conversation at that time with a boy friend of Janice's sister who lives on the second floor of the same building, and through whom the complainants had originally become acquainted with Aaron.

Subsequent to the filing of defendant's first appellate brief a supplemental record of proceedings was received by the assistant public defender representing the defendant. It documented the following colloquy between the defendant and the trial court judge:

"THE COURT: You know the difference between a bench trial and a jury trial?

THE DEFENDANT: Yes, sir.

THE COURT: In a bench trial I decide the law and I decide the facts also, and in a jury trial the jury decides the facts and I give the law, do you understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: You understand by your waiver of a jury trial, you waive your constitutional right, is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: You have discussed this with your attorney prior to the time you decided to waive, is that correct, sir?

THE DEFENDANT: Yes, sir.

THE COURT: You understand further, sir, if you do take a jury trial, it is not going to cost you any money or anything, do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: You are waiving trial by jury because you wish to waive it and have me decide the facts and the law both, is that correct, sir?

THE DEFENDANT: Yes, sir."

After becoming aware of the above conversation contained in the supplemental record, the assistant public defender informed this court that he wished to withdraw the contention raised in the original brief that the defendant did not knowingly and understandingly waive his right to a jury trial. He is now of the opinion that, in light of the admonition to defendant appearing in the supplemental record, the issue is no

longer appealable and is without merit. We agree and will not consider the issue further.

We therefore proceed to the next issue raised by defendant—whether the testimony of the two complaining witnesses was so incredible and inconsistent that his conviction cannot be sustained. The defendant bases this contention first on the fact that one sentence of a police report made by the officers responding to the call indicates that the complaining witnesses stated they were robbed by two unknown male Negroes who forced entry into their apartment. This is apparently inconsistent with their testimony at trial that they had known the defendant by the name of Aaron and that there was no forcible entry. The defendant also complains that the hours of occurrence as testified to by complainants do not coincide exactly with the hour of occurrence as indicated in the police report. It is further contended that while the two armed men had threatened them with physical harm and were deciding what to do with them, Janice told the phone caller she was being robbed by Aaron and her sister repeated it on the phone. It is argued that this testimony cannot be given any weight because of its implausibility.

The defendant cites *People v. Coulson*, 13 Ill.2d 290, 297, 149 N.E.2d 96, 99, for the conclusion that "[w]here testimony is contrary to the laws of nature, or universal human experience, this court is not bound to believe the witness." In *Coulson* the victim of the alleged armed robbery at the time of trial was serving a jail sentence for striking a man on the head with a pistol. He had been drinking the evening of the alleged robbery. The conviction was based on the testimony of the victim who was the only witness to the alleged robbery. The testimony of the victim's aunt in corroboration contained glaring discrepancies. Each of the defendants took the stand and positively denied that he or the other defendants robbed the victim, and their testimony was substantially the same in all respects. We invite a full reading of the facts of *Coulson* to appreciate the "improbable, unconvincing and completely unsatisfactory" nature of the State's evidence in that case. (13 Ill.2d at 298, 149 N.E.2d at 100.) We likewise invite a reading of both *People v. Barfield*, 113 Ill. App.2d 390, 251 N.E.2d 923, and *People v. Lees*, 60 Ill.App.2d 254, 208 N.E.2d 656, also cited by defendant. In both these cases as well, the suspect nature of the testimony regarding the circumstances surrounding the alleged crimes could not sustain convictions and compelled reversal.

But the record in the case at bar does not compel a similar result. Here the testimony of the complaining witnesses was sufficiently consistent and credible to sustain defendant's conviction. It is not so unsatisfactory that it justifies a reasonable doubt of defendant's guilt.

■■ Any claimed contradiction between the police report and the complaining witnesses' testimony could easily be explained as a possible misunderstanding, particularly in the abbreviated forms used by police when quickly making their reports. Surely minor discrepancies in the victims' testimony as to the hour of the actual robbery does not seriously discredit their veracity. Furthermore the contradiction relating to the identification of the defendant Williams is clarified by the police report itself. Although the first sentence of the narrative portion of the report describes the offenders as two unknown male Negroes, it later also states that one offender had been seen previously by the complaints. It also later indicates as "additional information" that complainant recalls that one offender's name is Aaron Williams, the last name apparently being supplied as a result of the responding officers' conversation with Janice Anderson's boy friend, who had introduced the defendant to the complainants on an earlier occasion. Finally, a supplemental police report filed by another police officer stated that the victims said they were robbed by Aaron Williams and another unknown male Negro.

■■ Regarding the actions of the girls and the defendant and his companion during the robbery, especially during the phone call, this was a matter of evidence to be considered by the trier of the facts. An overly objective assessment of the plausibility of the testimony deemphasizes the undoubtedly agitated and unnerved condition of the complainants at the time the crime was committed, and discounts the errant behavior of armed robbers.

As the Illinois Supreme Court has often stated:

> "It is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the weight of disputed evidence or the credibility of witnesses for that of the trier of fact who heard the evidence presented and observed the demeanor of the witnesses." *People v. Novotny*, 41 Ill.2d 401, 412, 244 N.E.2d 182, 188.

In summing up the evidence in the case at bar the trial judge stated:

> "All I have before me is the testimony of the two witnesses which really goes uncontradicted with the exception of the one paragraph in that police report and the last paragraph lists his name as Aaron Williams. So apparently it all took place at the same time. I see nothing to shake the girls' stories and there is nothing that I can see that I should not believe the two young ladies. And there is nothing; as far as I am concerned, the State has proved their case beyond a reasonable doubt."

The minor and explainable inconsistencies between the witnesses' testimony and the police report, and the perhaps curious but not unbelievable

testimony regarding the behavior of the victims and the offenders during the robbery is not sufficient for us to overturn the trial court's finding of defendant's guilt.

██ The defendant further contends that his five year minimum sentence should be reduced. It is undisputed that the new Unified Code of Corrections applies in the instant case. (*People v. Harvey*, 53 Ill.2d 585, 294 N.E.2d 269.) The new Code provides that armed robbery is a Class I felony. (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 18—2(b).) The minimum sentence for any Class I felony is four years, "unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term * * *." (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1(c)(2).) The old provision under which the defendant was sentenced set the minimum at five years. Ill. Rev. Stat. 1971, ch. 38, par. 18—2(b).

The State correctly indicates that the new Code does not *require* a minimum sentence of four years. Thus a resentencing under the new Code might well culminate in a five year minimum for armed robbery in any event, since the judge might find that the "Nature and circumstances of the offense and the history and character of the defendant" warrant a minimum term greater than four years. But here, during the hearing in aggravation and mitigation the trial judge expressed a desire to grant defendant the statutory minimum. The State asked for a six to twelve year sentence. The judge commented to the defendant;

> "There's no question I have to send you down to the penitentiary. The only question that arises is how you are going to take advantage of the time that you are down there.
>
> The minimum on this particular armed robbery is five years. That is the minimum I can sentence you to, and to me there seems to be some reason why you needed money at that time. Maybe it was narcotics, maybe it was something else, I don't know. * * *
>
> [T]he defendant will be sentenced to the Illinois State Penitentiary for a minimum of five to a maximum of eight in the Illinois State Penitentiary."

Under the circumstances here, the defendant should be given an opportunity to benefit from an application of the new Code. The case is therefore remanded for that purpose.

Conviction affirmed, remanded for purposes of resentencing.

ADESKO, P. J., and DIERINGER, J., concur.