THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LANDY JUNIOR WATKINS, Defendant-Appellant.

Second District (1st Division)    No. 75-508

Opinion filed December 3, 1976.

Ralph Ruebner and Andrew Berman, both of State Appellate Defender's Office, of Elgin, for appellant.

Gerry L. Dondanville, State's Attorney, of Geneva (Phyllis J. Perko, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Defendant was convicted of armed robbery following a jury trial and sentenced to not less than four years nor more than four years and one day in the penitentiary. He appeals, contending that he was not proven guilty beyond a reasonable doubt.

■■ The defendant's conviction was based entirely upon the

identification testimony of the complaining witness. Where the identification of an accused is at issue in a criminal case, the testimony of one witness is sufficient to convict even though the testimony is contradicted by the accused, provided the witness is credible and viewed the accused under such circumstances as would permit a positive identification to be made. (*People v. Brinkley*, 33 Ill. 2d 403, 405-06 (1965); *People v. Williams*, 60 Ill. 2d 1, 12 (1975).) Defendant claims, however, that he was not proven guilty beyond a reasonable doubt because there was a limited opportunity of the complaining witness to view her assailant and because of inconsistencies in her testimony. From our review of the record we do not agree.

The robbery occurred at approximately 9 p.m. on September 8, 1973. The complaining witness, Georgie Dabrowski, testified that she had been walking back from the grocery store near her home in Aurora with a friend, Lula Holly. They walked on the north side of New York Street in a residential block between Fourth Street and Lincoln. As the women passed the second of the five residences on the block, two young black men passed them on the sidewalk going in the same direction. Mrs. Dabrowski said she noticed their faces and remarked to Mrs. Holly, "That is one of Rose's sons." She did not notice anything in the men's hands. She said the men continued up the street to the last house on the block and stood near the sidewalk. As the women approached the second to the last house, the men came towards them. The witness testified that the defendant pointed a double-barreled, sawed-off shotgun at her and said, "Stand still. Don't move. Don't say a word and give me that goddam purse." The defendant then pulled the purse from her arm, and the two men ran up the street in the direction of a neighborhood park to the east. Mrs. Dabrowski identified the defendant in court as the man who had held the shotgun and grabbed her purse.

Mrs. Dabrowski testified that at the time of the robbery it was not dark, that there were street lights in the area, and that there were some porch lights on along New York Street. She stated that it was light enough to see her companion and to see the defendant. She testified that she saw defendant's face as he passed her on the sidewalk and that she looked defendant in the eyes when he was holding the gun pointed at her.

She said that defendant had a short jacket and a black hat with a white brim around it, but she could not remember anything about his remaining clothing nor could she remember the color of his jacket or pants. She could not remember anything about the other assailant except that he was wearing a longer coat and a black hat.

Mrs. Dabrowski testified that she had been employed at the Holiday Inn in North Aurora at various times during the previous 10 or 11 years and that Rose Watkins, the mother of the defendant, had been one of her

co-workers during the past three or four years. She had met or seen Mrs. Watkins' children on various occasions during the three years prior to the robbery. She had seen the defendant several times also.

Lula Holly testified that the two young men had passed them on New York Street, that they had waited a short distance down the street, and that one of the men put a shotgun to Mrs. Dabrowski's chest, announced a holdup and snatched her purse. She said that the police did not interview her on the night of the robbery because she had had too much to drink. She stated that Mrs. Dabrowski was not drinking prior to the robbery. When she was interviewed later, she told the police that she would be unable to identify either of the two robbers. She also testified as follows:

> "Q. After they passed you what, if anything, was said by anybody?
>
> A. Well, she said—probably said she knowed them, that one especially. Knowed one, didn't know the other. It was Rose Watkins' son."

The defense presented witnesses who lived in the various houses on New York Street which had been referred to by the complaining witness. One of the owners directly contradicted Mrs. Dabrowski's testimony that the porch light was on, saying that he turned it on when Mrs. Dabrowski came to the porch to seek help immediately after the robbery. He also stated that the porch light was off at the house next door. He did, however, testify that he saw interior lights on in several of the houses. There was additional testimony that the porch lights were not on at several of the houses which directly contradicted Mrs. Dabrowski's testimony.

The defense also produced an officer who interviewed Georgie Dabrowski shortly after the robbery. Refreshing his recollection from his report, he stated that Mrs. Dabrowski had told him that before the robbery she "was going" to tell her friend Lula Holly that one of the men was Rose Watkins' son. He also testified that Mrs. Dabrowski had told him that she used to work with her assailant and his mother at the Holiday Inn. In her testimony, however, Mrs. Dabrowski denied saying that she had worked with her assailant.

Two witnesses testified for the defendant that on the date in question defendant was in a recreation hall operated by the Kane County Council for Opportunity for several hours. One stated that defendant was present at around 9:30 p.m. when the hall was about to be closed. The center was approximately three blocks from the intersection of Lincoln and New York Street, but it appeared from the testimony that a person would have to walk five or six blocks after leaving the center in order to be walking in the direction the defendant was alleged to have been walking at the time of the robbery. Defendant's brother Ronald testified that he had been

with the defendant at the recreation center and that defendant was still there when Ronald left the center between 8:45 and 9:05.

The defendant testified that he had come into the youth center about 10 a.m. and that the only times he left the center were at 1:30 to get some lunch in a restaurant in the same building and at 9:20. He said that when he left the youth center at 9:20 or 9:30, he walked 4½ blocks to a local restaurant where he was told the police were looking for him. He then walked to the Aurora Hotel, arriving there shortly before 10 o'clock. He said he telephoned his parents who told him that the police had been to the house and told him to come home. He got home about 10:30 and called the police station. Upon being told by the police that he was wanted for armed robbery, he left his home and was arrested later that night with four other people at a movie theater in Aurora. He denied any involvement in the armed robbery. He said that he did not turn himself in because he was afraid he would be sent back to St. Charles for breaking his parole. On cross-examination he testified that his brother and cousin had been arrested prior to the robbery "with a shot gun." He said he had been in the Aurora Hotel for approximately 15 minutes on the night of September 8 to make the telephone call. On cross-examination he admitted that he had told the Aurora police that he had been at the Aurora Hotel but denied that he told them he had been there from 7 p.m. until 11 p.m. that night.

The State called an officer in rebuttal who testified that the defendant had told him that he was in a phone booth in the Aurora Hotel from 7 p.m. until 11 p.m. on the evening of September 8.

There was no evidence that either the weapon or Mrs. Dabrowski's purse were ever recovered or connected with defendant in any manner.

■■ ■ It is the function of the jury to determine the credibility of witnesses on the question of identification and its finding of guilty will not be disturbed unless the evidence is so unsatisfactory as to leave a reasonable doubt as to the defendant's guilt. (*People v. Hampton*, 44 Ill. 2d 41, 45 (1969).) With respect to identification testimony it has been held that the identification does not have to be made under perfect conditions or for a long period of time in order to be sufficient to establish guilt beyond a reasonable doubt. (*People v. Porter*, 29 Ill. App. 3d 456, 459 (1975). See also *People v. Stringer*, 52 Ill. 2d 564, 568 (1972).) Defendant has also placed considerable emphasis on testimony of the complaining witness which showed that she was unable to remember at trial the details of the crime which she reported to the police several months earlier. This, however, does not necessarily render her testimony incredible. (See *People v. Brown*, 16 Ill. 2d 482, 485-86 (1959).) The fact that there were contradictions between her testimony and the officer's recollection from the police report also does not render her testimony incredible. From our

review of the whole record, keeping in mind the abbreviated forms used by the police when making their reports, we cannot say that the jury was precluded from inferring that the report evidenced a misunderstanding of the statement of the complaining witness. (See *People v. Williams*, 17 Ill. App. 3d 358, 362 (1974).) Nor does the fact that Mrs. Dabrowski was unable to account for every detail of the appearance of her assailant require that the conviction be reversed. (See *People v. Trice*, 127 Ill. App. 2d 310, 315 (1970).) Further, the fact that the complaining witness's companion failed to identify the accused does not require a reversal. (See *People v. Macias*, 39 Ill. 2d 208, 217 (1968), *cert. denied*, 393 U.S. 1066, 21 L. Ed. 2d 709, 89 S. Ct. 721 (1969).) The fact that the victim had some prior acquaintance with the accused strengthens the reliability of her identification testimony. See *People v. Robinson*, 42 Ill. 2d 371, 375-76, *cert. denied*, 396 U.S. 946, 24 L. Ed. 2d 248, 90 S. Ct. 385 (1969); *People v. Farrar*, 7 Ill. App. 3d 312, 313-14 (1972).

The defendant suggests that in addition to various discrepancies in Mrs. Dabrowski's testimony that some additional doubt has been created by the method which the police used when Mrs. Dabrowski identified the defendant as one of her assailants from a group of five photographs shown to her at the police station approximately an hour and a half after the robbery. While the pretrial motion to suppress the photographs was denied and defendant does not raise this issue on appeal, he adds the inquiry as reflecting on the reasonable doubt issue. He points to the testimony at the suppression hearing that the only photographs shown to the victim were those of the defendant, his brothers, Ronald and David, and his cousins, Jerry and Charles Williams. Defendant notes that Mrs. Dabrowski stated at trial that she had never worked with him at the Holiday Inn but that she had worked with his brother Ronald. Defendant argues that an inference may be drawn that the police intimated to Mrs. Dabrowski that the identification was to be made from one of the five persons' pictures. The record however, does not support an argument that the photographic identification procedure was unduly suggestive. (See *People v. Williams*, 60 Ill. 2d 1, 10 (1975).) In addition, under the total circumstances the photographic identification procedure could not be said to have resulted in the misidentification. Mrs. Dabrowski recognized the assailant as someone she had previously known, and she positively picked out his picture from the photographs shown to her. See *People v. Williams*, 60 Ill. 2d at 11.

The credibility and weight to be given to defendant's alibi defense was clearly a matter for the jury. The testimony of defendant's witnesses did not clearly establish the fact that he was somewhere else at the time of the robbery. Defendant's testimony at trial to establish his alibi could have been considered by the jury to be considerably weakened by the fact that

the police testified to his original statement that he had spent four hours in a phone booth in the lobby of the Aurora Hotel on the evening of the robbery.

■■ Under the circumstances the alibi evidence cannot be said to have created a reasonable doubt of guilt. (See *People v. Carr*, 22 Ill. 2d 619, 624 (1961); *People v. Wright*, 126 Ill. App. 2d 91, 97 (1970). See also *People v. Gaiter*, 8 Ill. App. 3d 784, 788 (1972).) The jury could find from the evidence that Mrs. Dabrowski had sufficient opportunity to make a positive identification. They could consider the fact that she already knew the defendant; that she had more than one opportunity to look at the defendant's face prior to and at the time of the incident; that she had no difficulty making a photographic identification of the defendant at the police station; and that although there were various discrepancies which went to the weight of her testimony at trial, she had no difficulty in making a positive identification of the defendant at the trial. We cannot conclude that the determination was so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt of the defendant's guilt and therefore we will not disturb the judgment. See *People v. Donald*, 29 Ill. 2d 283, 286-87 (1963); *People v. Lamphear*, 6 Ill. 2d 346, 358 (1955). See also *People v. Ellis*, 24 Ill. App. 3d 870, 882 (1974).

The judgment is affirmed.

Affirmed.

GUILD, P. J., and RECHENMACHER, J., concur.