THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PATRICK G. SUMMERS, Defendant-Appellant.

First District (1st Division)   Nos. 62976, 63167 cons.

Opinion filed May 2, 1977.

Irwin L. Frazin and Jody C. Weiner, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Joan S. Cherry, and Loretta Hall Hardiman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Patrick G. Summers was charged by indictment with three counts of armed robbery and one count of burglary. A jury in the circuit court of Cook County found him guilty of armed robbery and burglary and he was sentenced to imprisonment in the penitentiary for 5 to 15 years. He appeals.

The defendant contends that his conviction must be reversed because (1) he was not proved guilty beyond a reasonable doubt where the identification testimony of the victims of the crimes was contradictory

and uncertain and (2) he was denied a fair trial where the prosecutor impermissibly commented on defendant's failure to testify at the trial. We affirm.

Randal Zuley, Arthur Czipo and Angelo Nazos were playing poker in the kitchen of a townhouse located in Schiller Park, Illinois, on August 25, 1973, at approximately 2 a.m. Diane Iannella, the owner of the residence, had been present until midnight, when she had gone to bed on the second floor of the unit. The men were seated at a table illuminated by a chandelier containing six light bulbs. They were not drinking and there were no alcoholic beverages in the house. The men had approximately $1100 in the aggregate on the table.

Two men armed with guns entered the kitchen through the door to the outside. At trial, Zuley and Nazos identified the larger of the two men as the defendant Patrick Summers. The intruders ordered the men at the table to place any other money they possessed, their watches and their jewelry on the table, to take off their clothes and to lie face down on the floor. The large man asked if there was anyone else present in the townhouse and was told that Iannella was upstairs. The large man proceeded to the bedroom and forced Iannella at gunpoint to descend to the kitchen with the others, where she too was ordered to lie face down on the floor. Iannella identified Patrick Summers at trial as the man who had brought her down to the kitchen during the robbery.

The large man asked and was told where the telephones in the townhouse were located and he proceeded to rip them out of the walls, while the small man continued to cover the victims with his gun. The intruders asked where "all the others" were, apparently expecting that there would be more card players and were told that there were no others expected. The robbers told the victims not to call the police because they had friends who would "take care" of the victims; they then left the townhouse with the money, jewelry, watches and a payroll check and identification which they had removed from Iannella's purse in the kitchen. They had been present for approximately 45 minutes.

Two of the victims shortly thereafter went to a neighbor and called the police. The police took a statement of the facts of the crime from the victims, including descriptions of the two robbers. However, the police did not take separate statements from each victim, but rather compiled a "composite" report, including a single report of the descriptions of the robbers.

The police investigation of the robbery proceeded for eight months until on April 26, 1974, Zuley and Iannella were asked to view several photographs at the Niles police station. Each, outside the presence of the other, picked defendant Patrick Summers' photograph out of a group of six photographs. The police went to the home of Patrick Summers and

requested that he accompany them to the police station and, after stating that he wanted to call his attorney first, he voluntarily went with the police. At the Niles police station, he participated in a lineup with five other men meeting the general description given by the victims. Both Zuley and Iannella independently identified Patrick Summers in the lineup as the larger of the two men who had robbed them.

At the trial, which began on September 22, 1975, Zuley, Nazos and Iannella pointed out Patrick Summers as one of the men who had robbed them 25 months before. Arthur Czipo, while corroborating the others' testimony as to the fact of the robbery and the general description of the robbers, could not "honestly say" that Patrick Summers was one of them.

Counsel for the defendant, in his opening statement, had indicated that Patrick Summers was a victim of misidentification and further stated:

> "Patrick Summers will testify and so will several other people on his behalf who will tell you that he wasn't there at the time. He was somewhere else. And he was out of town on a weekend with friends."

However, at the close of the prosecution's case, defense counsel, in chambers and off the record apparently, notified the judge and the prosecutors that defendant would rest without presenting any witnesses or testifying on his own behalf. While there has been no stipulated report of proceedings nor a bystander's report of this conference presented on appeal, it appears from the judge's later remarks that he admonished the prosecutors not to comment on defendant's opening statement during the closing arguments.

When arguments began, the prosecutor made a remark which did refer to defense counsel's opening statement, but no objection was made. Later, the prosecutor stated:

> "* * * Everything that you heard from the witness stand as to how this crime occurred on that day has been uncontradicted. Therefore, the only issue—"

The judge noted an objection by defense counsel at this point.

In rebuttal closing argument, the prosecutor stated:

> "Given, August 25, 1973, at 9818 Garden, Schiller Park, there was an armed robbery and there hasn't been anybody to come into this courtroom and deny that fact."

Defense counsel's objection was sustained. Later, the prosecutor, in describing the testimony of the victim, stated that: "Their testimony is uncontradicted and unrefuted." Defense counsel objected and asked for an admonishment, but the trial court stated that he had noted the objection and that the prosecution should proceed. Outside the presence of the jury, the court reserved ruling on defendant's motion for a mistrial until defendant's post-trial motion in the event of a guilty finding by the

jury and ordered a transcript of the closing arguments be prepared for his use in considering the motion.

The defendant was found guilty. During the hearing on post-trial motions, defense counsel argued that the comments by the prosecutor were grounds for a mistrial or, in the alternative, for a new trial. The court, after hearing the prosecutor's response, stated:

"Based upon the transcript which I have, as I said I have gone over it, and based upon my understanding of the law that motion will be denied."

Defendant argues that he was not proved guilty beyond a reasonable doubt, despite the fact that three of the four victims of the burglary and robbery, who had had opportunities to observe the invaders at the well-lighted scene of the crime for 45 minutes, pointed him out at the trial as one of the two offenders. Defendant makes a three-pronged attack upon the in-court identification, contending (1) the victims' identifications were the products of photographic displays and lineup procedures by the police which were improperly conducted and which caused the witnesses to pick Patrick Summers as the offender, (2) the descriptions given before the arrest to the police by the victims were contradictory and (3) Arthur Czipo's inability to identify defendant at trial raises a reasonable doubt that the other witnesses could honestly identify defendant at trial.

■■ We find that the first argument was waived because defendant failed to move for suppression of the identifications either before or during the trial. The State's answer to defendant's discovery motion revealed that Iannella and Zuley, the witnesses who identified defendant's photograph and who picked him out of the lineup, were among the State's potential witnesses and that the photographs involved and a photograph of the lineup were potential evidence to be introduced at trial. This answer to the discovery motion was filed several months prior to trial. Furthermore, defense counsel failed at trial to object to Iannella or Zuley as witnesses and failed to object to the introduction of the photographs into evidence. Since the defendant failed to raise the issue of suppressing this allegedly impermissibly suggestive pretrial identification of defendant in the trial court, it will not be considered on appeal. *People v. Neal* (1973), 15 Ill. App. 3d 940, 946, 306 N.E.2d 43, 47.

■■■ Even if this point had been properly raised at trial, there was nothing improper in the identification procedures utilized by the police in this case. The defendant was not in custody at the time of the initial photographic identification by Iannella and Zuley. The fact that defendant's photograph is noticeably darker (that is, it appears to be somewhat underexposed) than the other photographs of men shown to the witnesses is not grounds for reversal, since the witnesses testified that the darkness of the photograph did not draw their attention to it or cause

them to pick it out. (See *People v. Hudson* (1972), 7 Ill. App. 3d 333, 336, 287 N.E.2d 297, 300, where the fact that defendant's photograph was in color while the others in the group shown to the witness were black and white did not, standing alone, require reversal.) Nor was the lineup unduly suggestive where Iannella and Zuley individually and without collaboration picked defendant out of the group of five men of approximately the same height and heavy build. We have examined the record, including the photographs at issue and a photograph of the lineup array, and find nothing "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (*Simmons v. United States* (1968), 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 1253, 88 S. Ct. 967, 971.) It is clear that the in-court identifications had an independent origin: the presence of the victims at the scene of the crime where they had an ample, well-lighted opportunity to view the offenders. The existence of such an independent origin for the identification would validate impermissibly suggestive identification procedures. (*People v. Connolly* (1973), 55 Ill. 2d 421, 427, 303 N.E.2d 409, 412.) Furthermore, even if the identifications by Iannella and Zuley were not properly admitted, the evidence would still be sufficient to convict defendant because Nazos, who did not participate in the photographic or lineup identifications, pointed out defendant at trial as one of the offenders. "A positive identification by a single witness with ample opportunity to observe is sufficient to support a conviction." *People v. Williams* (1975), 60 Ill. 2d 1, 12, 322 N.E.2d 819, 825.

■■  With regard to the issue of contradictory descriptions being given by the victims to the police, the alleged inconsistencies relate to estimates of height and weight of the larger man and whether he wore glasses or had a mustache at the time of the offense. The fact that Iannella estimated the offender's height to be five or six inches less than defendant's height must be considered in light of the assertion that she is not a good judge of height and the fact that she, as well as Zuley and Nazos who had more correctly estimated defendant's height, pointed out defendant at trial. It is true that there was some disagreement among the witnesses as to whether defendant wore glasses or wore a mustache or whether the mustache was false. But these inconsistencies in pretrial descriptions go to the weight to be accorded the identification testimony by the trier of fact and do not raise a reasonable doubt of defendant's guilt. (*People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 19, 337 N.E.2d 454, 460.) These inconsistencies in pretrial descriptions of defendant were vigorously argued by defense counsel to the jury, which found defendant to be guilty, and we will not substitute our finding of fact for that of the jury where the testimony is only slightly conflicting, as it is here. *People v. Jackson* (1974), 23 Ill. App. 3d 1011, 1016, 320 N.E.2d 400, 403.

■■ Arthur Czipo did not deny that Patrick Summers was one of the robbers; he was only unable to honestly point out Patrick Summers at trial as one of the robbers. His testimony therefore does not contradict the in-court identification of Summers by Iannella, Zuley and Nazos. We find that Czipo's inability to identify defendant as one of the two men who had robbed him more than two years prior to the trial raises no inference that the other three victims could not have identified him correctly. The ability of each witness to recall is an attribute peculiar to each and does not depend upon the ability of the other witnesses to recall. The length of the time delay between the crime and trial is a factor that goes to the weight of the testimony and is properly resolved by the jury. Czipo testified that because of his position on the floor he did not have as clear a view of the larger man as did the other witnesses. His testimony was corroborative of the other victims' testimony in describing the scene of the crime, the lighting conditions, the sequence of events, the length of time defendant and his accomplice were present and the general description of the robbers, including the description of the larger man. As in *People v. Rodgers* (1972), 3 Ill. App. 3d 85, 95, 279 N.E.2d 72, 80, the testimony of this one witness who could not positively identify defendant does not create a reasonable doubt of defendant's guilt where the other witnesses unequivocally pointed out the defendant at trial.

■■ We therefore conclude that defendant was proved guilty beyond a reasonable doubt.

Defendant, in arguing that the remarks of the prosecutor resulted in prejudice so great that he was denied a fair trial, asserts that (1) the prosecutor's remarks were in direct contravention of an admonition by the trial judge not to comment on defense counsel's opening statement and (2) the remarks were calculated to and did draw the jury's attention to the fact that the defendant did not testify in his own behalf.

The admonition of the trial judge is not a part of the report of proceedings filed with this court. Nor have we been furnished with a bystander's report or a stipulated report of proceedings as provided for in Supreme Court Rules 612 and 323(c), (d) (Ill. Rev. Stat. 1975, ch. 110A, pars. 612, 323(c), (d)). Since we are not presented with the substance of the trial court's admonition we cannot, on review, determine whether the remarks of the prosecutor violated the judge's order. "The responsibility for the proper preservation of the record of the proceedings before the trial court rests upon the defendant." *People v. Smith* (1969), 42 Ill. 2d 479, 483, 248 N.E.2d 68, 71; *People v. Wilson* (1975), 32 Ill. App. 3d 57, 60, 335 N.E.2d 499, 501.

Moreover, the trial judge himself was in the best position to determine whether his own admonition was violated and he did consider the remarks of the prosecutor in closing argument in ruling on the post-trial

motions. The judge had read the transcript of the closing arguments before the post-trial hearing and apparently determined that the remarks did not violate his admonition. Under these circumstances, we must presume that the trial judge performed his duty to supervise the closing arguments and properly exercised his discretion. *People v. Smothers* (1973), 55 Ill. 2d 172, 175-76, 302 N.E.2d 324, 326-27.

■■ Nor can we say that the remark of the prosecutor complained of, taken in context, constituted plain error which requires reversal even though not objected to at trial:

> "When we started this case, each of the attorneys was allowed to make an opening statement and to tell you·what they thought the evidence would prove.
>
> I want you, when you deliberate on your verdict, recall my opening statement, *recall* [defense counsel] *Mr. Frazin's opening statement*, and when you do, see if we, on behalf of the State, haven't proved to you everthing we promised you we would prove from the witness stand under sworn testimony, because I think we have delivered, ladies and gentlemen, we have delivered what we said we would." (Emphasis added.)

In *People v. Williams* (1975), 26 Ill. App. 3d 381, 385, 324 N.E.2d 707, 710, the court considered such a remark in a case in which the defense counsel's opening statement indicated that an alibi would be presented, but defendants put on no witnesses and did not take the stand in their own defense. The court felt that the comment could be construed as a statement that the case was undisputed and therefore proper comment and that, even if it were improper, it did not require reversal where the evidence of guilt was overwhelming. For the same reasons, we find no grounds for reversal because of this remark.

■■ The other comments complained of and objected to at trial do not depend upon the trial court's admonition for their consideration on appeal. A defendant's right to trial free from comment by the prosecutor on his failure to take the witness stand is secured by both the Federal and State constitutions (U. S. Const., amend. V; Illinois Const. 1970, art. I, §10). *Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229, prohibited, on amendments V and XIV grounds, comment by the prosecutor or instructions by the court on the fact that the accused chose not to testify. The Illinois position predates *Griffin* considerably. The statutory embodiment of this rule is contained in section 6 of division XIII of the Criminal Code of 1874 (Ill. Rev. Stat. 1973, ch. 38, par. 155—1), which reads in pertinent part:

> "* * * Provided, however, that a defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any

presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect."

Violations of this section by overzealous prosecutors have been repeatedly condemned by the reviewing courts of Illinois and, where it appears that such remarks contributed to the verdict, convictions have been reversed. See, *e.g.*, *Austin v. People* (1882), 102 Ill. 261; *People v. Burton* (1969), 44 Ill. 2d 53, 254 N.E.2d 527; *People v. Helm* (1973), 9 Ill. App. 3d 143, 291 N.E.2d 680.

"The recognized test for determining whether a prosecutor's comment has violated a defendant's exercise of his right to remain silent under this statute was set forth for the first time in *Watt v. People* (1888), 126 Ill. 9, 32, 18 N.E. 340, 350:

'* * * [W]as the reference intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify?' "

*People v. Lyons* (1976), 44 Ill. App. 3d 802, 803-04, 358 N.E.2d 1183, 1184.

In the instant case, we have reviewed the record of the closing arguments and cannot conclude that the remarks were intended or calculated to draw the attention of the jury to the defendant's election of the privilege. Prosecutors have been permitted to comment on the uncontradicted nature of the State's evidence, even where the defendant is the only person who could be expected to contradict it by his testimony. (*People v. Reno* (1975), 32 Ill. App. 3d 754, 759, 336 N.E.2d 36, 39.) We find that this rule is especially applicable to the case at bar, where the State's case was, in fact, uncontradicted and unrefuted. Defendant called no witnesses; therefore, *People v. Wollenberg* (1967), 37 Ill. 2d 480, 229 N.E.2d 490, is not in point. The defense of misidentification was raised through cross-examination of the State's witnesses and arguments of counsel. None of the State's witnesses, on direct or cross-examination, testified that there had not been a robbery or that Patrick Summers was not one of the offenders, distinguishing this case from the facts presented in *People v. Blissitt* (1973), 12 Ill. App. 3d 551, 299 N.E.2d 562. Since the State's evidence was, in fact, uncontradicted, there was no violation of defendant's rights because of the remarks.

We note also that, at defendant's request, the jury was instructed that: "The fact that the defendant did not testify should not be considered by you in any way in arriving at your verdict." (IPI Criminal No. 2.04.) Therefore, if the jury inferred from the prosecutor's argument that the defendant had any burden to present evidence or to testify, the inference was condemned by the trial judge.

■■ Finally, if there were any prejudice to defendant in the prosecutor's remarks such that his constitutional right to a fair trial was affected, we find that it was harmless beyond a reasonable doubt and did

not contribute to the jury's verdict, because the evidence of his guilt was overwhelming. (*People v. Williams.*) Three eyewitness-victims, who had had 45 minutes to observe the offenders in a well-lighted room during the commission of the crime, pointed out Patrick Summers at his trial as one of the home invaders. Defendant was proved guilty beyond a reasonable doubt.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.