THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MELVIN LEE SMITH, Defendant-Appellant.

Second District    No. 76-81

Opinion filed September 16, 1977.

584

Ralph Ruebner and Andrew Berman, both of State Appellate Defender's Office, of Elgin, for appellant.

Gerry L. Dondanville, State's Attorney, of Geneva (Phyllis J. Perko and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

Defendant, Melvin Lee Smith, was found guilty of armed robbery in a jury trial and sentenced to 4 years to 4 years and 1 day in the State penitentiary.

The issues presented in this appeal are whether the defendant was found guilty beyond a reasonable doubt where there was a discrepancy in the description given by the single eye-witness; and whether various statements made during closing arguments by the prosecutor and not objected to by the defense were prejudicial to the defendant's right to a fair trial or to his right to remain silent.

At approximately 1:15 a.m. on March 26, 1974, three armed black males robbed the Hilton Inn in North Aurora and approximately $200 was taken. The robbery began when a black male, wearing a wide brimmed hat and a lavender and grey coat with leather buttons, confronted the night auditor, Claudia Jean Watson, with a handgun and announced a robbery. Two other black males then entered the lobby and approached the hotel desk. One of these men was also armed with a handgun and wore a black leather jacket, a stocking cap and had the lower half of his face concealed. The third man wore a wide brimmed hat and a greyish coat. The man with his face partially concealed handed his weapon to the man in the greyish coat and leaped over the hotel desk. The man with the greyish

coat then pointed the weapon at Miss Watson, who was standing facing him approximately two feet away. Money was taken from the hotel cash register, the petty cash box and Miss Watson's purse and given to the man in the greyish coat.

The area of the hotel desk was well lit by fluorescent lights and Miss Watson saw the face of the man with the greyish coat for approximately 2-3 minutes before being ordered to lie on the floor. She also observed his face for 45 seconds to one minute as he leaned over the hotel desk while she was on the floor. She was then ordered by the robbers to turn her face to the floor.

The three robbers then left the Hilton Inn, leaving Miss Watson lying on the floor behind the hotel desk. Shortly thereafter she called the North Aurora police department. The police investigation resulted in the arrest of the defendant as the robber in the greyish coat after Miss Watson identified his photograph from a group of eight or nine pictures of black males shown to her by the police on March 31, 1974. At a preliminary hearing on April 29, 1974, Miss Watson testified as to her photographic identification of the defendant and described him as she perceived him on the night of the robbery. The presence of the defendant at the preliminary hearing was waived by the defense and Miss Watson was not called upon to identify anyone present in the courtroom on that date.

At a lineup on September 19, 1974, Miss Watson viewed 9-10 seated black males. At that time Miss Watson positively identified the defendant. At trial the State again presented Miss Watson, who testified as to the events of March 26, 1974. In open court she positively identified the defendant as the robber who wore the hat and the greyish coat. Miss Watson estimated the height of the man in the greyish coat as being 5′8″ tall, about 6 inches taller than herself. On cross-examination, Miss Watson recalled seeing three black men in the courtroom at the preliminary hearing but she testified that she did not see the defendant that day. In addition to the testimony of Miss Watson, the State presented Assistant State's Attorney Thomas Hogan, who testified as to the identification process which took place at the lineup.

For the defendant, Betty Walls testified that she had lived with the defendant until one week before the trial and that on the night in question she and the defendant were home playing cards until the early hours of the morning when they then went to bed. On cross-examination Miss Walls stated that the defendant would not let the investigator from the State's Attorney's office interview her prior to the trial.

The defendant testified that he played cards with Miss Walls until approximately 2 a.m. when he and Miss Walls went to bed. The defendant then testified that he was seated in the rear of the courtroom with two other black men during the preliminary hearing.

In weighing the sufficiency of evidence in a criminal case, the finding of the trier of fact will be affirmed unless the court of review can form a reasonable and well-founded doubt as to the defendant's guilt. (*People v. Jones* (1975), 60 Ill. 2d 300, 325 N.E.2d 601.) Defendant contends that such doubt is raised by various elements of the eye-witness testimony.

■■ It is settled that a single positive and credible witness who had an ample opportunity to observe the accused is sufficient to support a conviction, even though such testimony is contradicted by the alibi testimony of the accused. *People v. Jones; People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631; *People v. Watkins* (1976), 44 Ill. App. 3d 73, 357 N.E.2d 1376.

■■ It is defendant's contention that Claudia Watson was not credible in that she consistently estimated his height at 5'8" and he testified that he was 6'2" tall. In addition, the witness did not observe whether the defendant wore platform shoes as did one of the other robbers, nor could the witness state positively whether the defendant had a light moustache on the day of the robbery due to the lighting in the hotel lobby. Defendant also places great emphasis on the fact that the witness testified at trial that she did not see the defendant in the courtroom at the preliminary hearing but thought she remembered three black men being in the room. Defendant testified that he was present in the rear of the courtroom on that day.

■■ Precise accuracy in describing facial characteristics, hair, height and weight, is unnecessary where the in-court identification is positive. Experience tells us that an identification is not usually made by distinguishing separate features but by the total impression made upon the witness. (See *People v. Catlett* (1971), 48 Ill. 2d 56, 268 N.E.2d 378 (defendant's moustache not mentioned by witness); *People v. Miller* (1964), 30 Ill. 2d 110, 195 N.E.2d 694 (defendant's facial scar not noted by witnesses); *People v. Summers* (1977), 49 Ill. App. 3d 70, 75, 362 N.E.2d 1347, 1353 (discrepancy as to 5- or 6-inch variance in height and whether defendant had a moustache); *People v. Gant* (1974), 18 Ill. App. 3d 61, 309 N.E.2d 265 (police witnesses at inquest could not describe defendant in detail but positively identified him at trial); *People v. Calhoun* (1971), 132 Ill. App. 2d 665, 270 N.E.2d 450 (discrepancy in description of defendant's height of approximately 4½" and weight of approximately 25 pounds and failure to mention moustache did not raise reasonable doubt).) It is clear that the variance between the height estimate by the witness and the actual height of the defendant, and her failure to note whether or not the defendant wore a moustache are not fatal to the credibility of the witness as a matter of law. The fact that Claudia Watson did not see the defendant in the courtroom at the preliminary hearing also fails to impress us as evidence of her lack of credibility. Neither does it

render her identifications any less positive. The record does not relate that she was ever asked to identify anyone present at the preliminary hearing. The sole evidence of the defendant's presence is his own brief and uncorroborated statement. Assuming *arguendo* that his failure to identify the defendant did raise a question of Claudia Watson's credibility, the jury clearly resolved it in her favor. We do not find that choice unreasonable.

The focus of any case involving an identification is the extent of the witness' opportunity to form an independent impression of the offender at the scene of the crime. Where the circumstances do not afford a favorable opportunity for positive identification that evidence may not be sufficient to sustain guilt beyond a reasonable doubt where faced with a plausible alibi. (See *People v. Gardner* (1966), 35 Ill. 2d 564, 221 N.E.2d 232; *People v. Cullotta* (1965), 32 Ill. 2d 502, 207 N.E.2d 444; *People v. Reese* (1973), 14 Ill. App. 3d 1049, 303 N.E.2d 814.) However, in the instant case the record reveals that Claudia Watson closely observed the defendant's face for 2-3 minutes at a distance of 2 feet in a well-lighted hotel lobby and for an additional 45 seconds while she lay on the floor. The lack of opportunity for the witness to note the type of shoes worn by the defendant, the insufficiency of the lighting as to color and texture, and the shading of his face by the brim of his hat do not, in our view, create of themselves circumstances unfavorable to positive identification.

■■ Although proof of alibi was offered by the defense, the determination of the issues of identification and credibility were within the province of the jury. Their decisions regarding these matters were not so unreasonable, improbable or unsatisfactory as to be disturbed by this court on review. See *People v. Donald* (1963), 29 Ill. 2d 283, 194 N.E.2d 227.

The next issue raised in this appeal involves various comments made by the prosecutor during his closing arguments. None of the comments complained of was objected to by the defense at the time they were made, although the issue of their alleged impropriety was raised during defendant's post-trial motions.

■■ The general rule applicable in this situation is that failure of the defense to make a timely objection to improper comments of the prosecutor during final arguments waives consideration of such comments on appeal unless they are plainly a material factor in the conviction and substantially prejudiced the defendant's right to a fair trial. (*People v. Dukett* (1974), 56 Ill. 2d 432, 308 N.E.2d 590; *People v. Moore* (1973), 55 Ill. 2d 570, 304 N.E.2d 622; *People v. Skorusa* (1973), 55 Ill. 2d 577, 304 N.E.2d 630; *People v. Pugh* (1977), 49 Ill. App. 3d 174, 363 N.E.2d 1212; *People v. Ambrose* (1975), 28 Ill. App. 3d 627, 329 N.E.2d 11; *People v. Mackins* (1974), 17 Ill. App. 3d 24, 308 N.E.2d 92.) However, care must be exercised in the application of this rule for, as our Supreme court has stated:

"Each case of this kind must be decided upon its own facts." (*People v. Weathers* (1975), 62 Ill. 2d 114, 120, 338 N.E.2d 880, 883.)

Consequently, we shall examine each of the comments individually in the light of the whole record.

■■ First, defendant raises as plain error the following prosecutorial comment:

"Okay. Now, I also would not like to see anybody here put this man back out on the street by saying: 'Hey, that's a pretty neat trick, they hid him in the Courtroom,' you know.

Now, law is not tricks. Law is being up front. Now, you have been around the Courthouse to know that you have seen the mass confusion and crowded Courtrooms. Not every trial is like this where there are just two or three people watching this. There was no showing how many people were watching the hearing that happened last time, how far back he was, what the situation was. I didn't ask many questions because to me it was ridiculous. Maybe he was in that Courtroom, maybe he wasn't, but if he wasn't up in a chair, or they say: 'Okay, is he—you see those three guys back there, is he one of those three?' That wasn't asked in that trial. So this is not rhetoric, this is a defense trick."

The prosecutor's selection of the word "trick" to characterize the defendant's alleged presence in the rear of the court at preliminary hearing was clearly not proper in a judicial proceeding and we do not condone its use. However, we find from a review of the complete record that the prosecutor's argument in this regard had a basis in the evidence and was, to some small extent, provoked by the closing argument of the defense counsel who stated, in pertinent part:

"* * * Mr. Puklin * * * is the best lawyer the State's Attorney's staff has * * * You have just seen him use every skill that he has to make something out of this case, to make it appear that there's more than there is * * * but don't let that frosting divert your attention from the real facts here. * * *"

In this regard compare the comments and the results relied upon in *People v. Stock* (1974), 56 Ill. 2d 461, 309 N.E.2d 19, and *People v. Brown* (1964), 30 Ill. 2d 297, 196 N.E.2d 664. Moreover, we feel that the word "trick" in and of itself did not substantially prejudice the defendant so as to deprive him of a fair trial. See *United States v. Di Giovanni* (7th Cir. 1968), 397 F.2d 409, *cert. denied*, 393 U.S. 924, 21 L. Ed. 2d 260, 89 S. Ct. 256 (use of term "cheap trick" held not reversible error even though prejudice not waived due to sustained objection).

■■■ The next prosecutorial comment raised by the defendant is:

"Okay. Doubt has to be a reasonable one. I think what you saw here was a man who has been identified, who has been captured

and a loved one doing whatever she can to get him out of this. I believe they have both lied under oath. I don't believe the doubt they have tried to create is a reasonable doubt in light of what you would do if you had an ironclad alibi for a loved one."

It has long been held in Illinois that in closing arguments the prosecutor has the right to assume the truth of the evidence offered by the People. (*People v. Moore* (1916), 276 Ill. 392, 114 N.E. 906.) It is also well settled that, though it is improper comment for the prosecutor to call the defendant or his witness a liar, it is not prejudicial error if such characterizations were based upon the evidence or were a reasonable inference which could be drawn from that evidence. (*People v. Weathers.*) In this case the record reveals a direct and substantial contradiction between the testimony of the People's witness and that of the defendant and his witness. Although we again condemn the word usage of the prosecutor, we find it apparent that the proposition he enunciated can be reasonably inferred from the evidence and this comment failed to result in substantial prejudice to the defendant.

Defendant finally argues that certain comments of the prosecutor imputed to the defendant the failure of Betty Walls to tell police of defendant's alibi and her refusal on orders of the defendant to speak to the prosecutor's representative who was attempting pretrial discovery. Such imputation, it is contended, violates defendant's fifth amendment right against self-incrimination pursuant to the rule of *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240. The allegedly violative prosecutor's comments are as follows:

"The defense is alibi. Now, this is a very interesting alibi. I want you all to think what you would do in a situation like this, what you would do, and if you feel that this alibi was handled the way you would handle it I will be surprised.

* * *

In fact, yesterday when we attempted to talk to her about an alibi she wouldn't talk to us, she wouldn't talk to the police officer. Melvin Smith, the same guy that wasn't at the hearing, that hid in the back, maybe, told her not to. If you had what this is supposed to be an ironclad alibi, you were home with your spouse, or your friend, or your buddy, or girl friend or boy friend and you knew it, one week from the day that the thing happened, had happened on a late Monday, early Tuesday, and you knew on Monday or Sunday next that he was suppose to, wouldn't you run to the police and say: 'Hey, look, he was with me, he didn't do it.'

Which one of you would not? They didn't. They had no obligation to. By the way, they have no obligation to tell us anything, but wouldn't you, if you were innocent and if you had a

loved one in trouble, run in and tell the police? You're right, you would.

\* \* \*

And even when the police were out there to ask her about it she wouldn't talk—or he wouldn't let her talk about it. That's a curious thing. Why, why wouldn't anybody talk about the alibi until we get to Court."

Defendant places great stress upon the prosecutor's use of the plural form "they" at various points and argues that this was impermissible comment on his right to silence and thus reversible error per se. We do not agree. An unbiased reading of the entire record clearly reveals that the prosecutor was referring to the defendant's undisputed ordering of the witness to refuse to talk to the prosecutor's representative and not of any failure or refusal of the defendant himself to speak. The defendant's fifth amendment right shields only himself and not his witnesses who are specifically made available to the People through the liberal discovery rules of our court system. We therefore specifically find that the holding of *Doyle v. Ohio* is not applicable under the facts of this case.

■■ As to the comments themselves, it has recently been held that, "The silence of the witness is more akin to a prior inconsistent statement. Reasonably he should have said something but did not. The inferences so raised by silence became inconsistent with his testimony. We may be crossing a threshold, but it seems to us that when one is asked to be interviewed on what his testimony will be, he declines at the risk that he may be asked later on at trial about such fact and his reasons therefor. It is a risk he takes. Perhaps it can be explained away, but it is nonetheless still a risk. Again, lack of cases is a puzzlement. We think that it is proper to bring out on cross-examination the fact that the witness has refused to talk to the examiner's side of the case where a fifth amendment privilege against self-incrimination of that witness is not relevant." *People v. VanZile* (1977), 48 Ill. App. 3d 972, 363 N.E.2d 429, 434.

■■ We concur with the analysis and proposition of law articulated in *VanZile*. Therefore, the prosecutor's commentary as to the inaction and unresponsiveness of Betty Walls is clearly proper.

Having pursued our examination of the allegedly erroneous comments to its logical conclusion, we find that the adverse effect of the foregoing comments, if any, was not only waived by failure to make timely objections, but was not a material factor in the conviction resulting in substantial prejudice to the defendant's right to a fair trial.

Appellee's motion to strike a portion of appellant's reply brief, which we have taken with the case, is of no significance in our decision. The motion is accordingly denied.

For the reasons set forth above, the judgment of the trial court is affirmed.

Affirmed.

RECHENMACHER, P. J., and WOODWARD, J., concur.